## No. 11,470.

THE CYPRESS SHINGLE AND LUMBER COMPANY VS. P. LEONCE LORIO.

1. A person who has made advances of money and also of supplies in kind, in aid of the deadening of trees and the cutting and hauling of logs, can not claim a privilege for the whole advances on the logs and also a vendor's privilege on the special articles furnished. McRae vs. His Creditors, 16 An. 306.

2. The affidavit made for the purpose of obtaining a writ of sequestration is *prima facie* evidence of the facts authorizing the writ.

APPEAL from the Fourteenth District Court, Parish of Iberville. Talbot, J.

*Alex. Hebert, Geo. Wailes, Geo. L. Bright* and *A. H. Leonard* Attorneys for Plaintiffs and Appellants:

Appellant claims that the judgment rendered in the court *a qua* is erroneous in so far as it dissolves the sequestration. We are utterly at a loss to conceive the reason which induced the learned judge *a quo* to so decide.

There was no motion made to dissolve the sequestration, no suggestion in argument that it should be dissolved, and if there had been, such motion or suggestion could not have prevailed. There can be no doubt with regard to the advances made by the company to Lorio. He does not dispute them.

Act 33, session 1882, invests any person advancing money or furnishing supplies to enable another to deaden, cut, haul, float or raft any logs or forest timber, with a privilege upon such logs or timber.

The affidavit, order and bond for sequestration do not seem to be in any respect defective.

Shingle and Lumber Company vs. Lorio.

*R. N. Sims* and *G. A. Gondran* Attorneys for Defendant and Appellee:

A contract should be construed to give effect to every part of it. 3 An. 363; 7 An. 229; 8 An. 488; C. C. 1942, 80.

Plaintiff's mere demand for timber, without any offer to comply on his part, does not constitute default. C. C. 1912, 1913; 23 An. 107; 19 An. 84, 130, 178; 37 An. 835; 31 An. 165.

Plaintiff's original petition does not allege that defendant was ever put in default, and contains no prayer for a specific performance or for the rescission of the contract. The supplemental petition contains no allegation as to the putting in default, and sets forth no additional fact in support of the prayer therein for the annulment of the contract. Neither petition exhibits legal or sufficient ground to warrant the avoidance of said contract, by judgment, at plaintiff's instance, nor the recovery of the amount advanced under the contract, nor for alleged damages. As to all of these matters, plaintiff's petition and supplemental petition do not disclose any cause of action, and defendant's exception thereto ought to have been sustained. C. C. 1912-1913; 30 An. 1125; 37 An. 659-835; 5 La. 415; 14 La. 80; 11 La. 240; 7 La. 193; 18 La. 510; 3 An. 28; 9 Rob. 52; 2 An. 392. The allegations of the petition, as to plaintiff's obligations under the written contract, are controlled by the terms of said contract, which is annexed to plaintiff's petition as part thereof. Hennen 1148, No. 4.

The dismissal of plaintiff's petition on the exceptions of no cause of action would have left intact defendant's reconventional demand, his answer having been filed before the exceptions. Defendant, as appellee, having answered the appeal, is entitled to ask for the reversal of any part of the judgment of the lower court in which there may be error to his prejudice. C. P., Arts. 888, 890; Hennen, p. 70; 7 N. S. 657; 15 La. 352; 12 An. 241.

The contract involved, contemplated and stipulated the delivery by defendant to plaintiff of about five million feet of cypress lumber to be taken from the former's lands after being deadened, cut and hauled, together with other usual preliminaries and preparations incident and necessary to its proper manipulation, and further contemplated and stipulated expressly the obligation on the part of plaintiff to advance the defendant all the money required to fulfil his part of the contract.

Plaintiff utterly failed to carry out its agreement with the defendant, and its refusal to make further advances was under a mere groundless pretence. Plaintiff was formally put in default on the 9th of February, 1893, and defendant may lawfully claim damages for all losses suffered by him resulting from his enforced abandonment of the work. Sutherland on Damages, Vol. 1, pp. 127, 128, 130, 132; C. C. 1934; 44 An. 472.

Measure of damages. Defendant entitled to the profits he could have made under the contract. Full indemnity the true measure of damages, plaintiff having acted in bad faith. C. C., Art. 1934; Sutherland on Damages, pp. 17, 74 and 149; 44 An. 472; 26 Kan. 482; 10 N. Y. 489; 72 Ill. 161; 55 N. Y. 664; 13 Wis. 34; 73 Penn. 365.

The opinion of the court was delivered by

NICHOLLS, C. J.   On 27th September, 1892, the plaintiff and de-

fendant entered into a contract which recites that "the defendant is the owner of a certain tract of land with cyress lumber thereon to the amount of five million feet, more or less, and of o her tracts from which he also intends to get timber." The contract contains the following stipulations:

1. Lorio agrees to deaden, cut and haul, on the bank of Bayou Maringouin, there to be measured and docked, then to be rafted and delivered at the mouth of the bayou to the company, lengths of timber of not less than a specified measurement.

2. The company are to measure the timber at the end of each month as it lays on the bank of Bayou Maringouin, ready to be rolled into the bayou; the timber after being measured is to be rolled into the bayou, rafted and run down to the mouth of the bayou.

3. Lorio agrees to deliver the timber as aforesaid at the mouth of the bayou, all necessary expenses incurred in delivering the timber at the mouth to be paid by him.

4. The timber to be delivered at the mouth of the bayou for the sum of eight dollars per one thousand feet B. M. The shingle company obligating themselves to furnish to Lorio all money needed for current expenses in deadening and hauling, etc., and also to advance money on two timber wheels, also to advance feed for oxen.

5. As the timber is measured at the end of every thirty days, settlement is to be made at every time—one-third cash, one-third four months' note, one-third eight-months' note.

6. The money advanced on current expenses and for feed and timber wheels is to be deducted from the first cash payment on the timber. In the event that the cash payment is less than the money advanced, then the balance of the money due on expenses is to be deducted from the second cash payment on the timber, and if expenses still exceed the amount cash due, the money still due for advances will then be deducted from the third cash payment.

7. Lorio agrees to commence work at once as to deadening and other preparations necessary in manipulating the timber.

8. The company agree to let Lorio have five hundred dollars in the course of eight or ten days, to be deducted from the second or third cash payment, on which he is to pay interest at eight per cent.

In February, 1893, the plaintiffs brought the suit, in which they prayed for a judgment against the defendant for the sum of two

thousand two hundred and thirty-four dollars and twenty-three cents, with interest, with recognition of a privilege to secure payment of the same upon certain logs and other movable property of the defendant.

In the petition filed, after referring to this contract plaintiffs declared that it was understood and agreed that the money advanc d for current expenses, for feed and for the timber wheels was to extend no further than the third cash payment, claiming that under their construction of the contract the first cash payment was to have been on October 27, 1892, the second on the 27th of November, and the third the 27th of December. That the advances were not to extend further than the date of the third cash payment, as it was the true intent and understanding of the parties that Lorio could then by discount or otherwise realize on his notes and would be his own furnisher of supplies, and would then require but small advances if any at all.

Plaintiffs further averred that, believing defendant to be acting in good faith, they not only advanced him the money and mater als mentioned in the contract but made him advances both in money and materials far in excess of his obligations; that from the date of the contract to the 23d of February, 1893, they advanced him in money one thousand seven hundred and sixty-two dollars and twenty-three cents in cash, and four hundred and seventy-one dollars and fifty cents in materials.

That though defendant bound himself to haul with ox teams timber from his lands to the bank of the bayou, and to deliver same at the mouth of the bayou every thirty days, he had failed and refused to do so, in violation of his contract, nothwithstanding the most favorable and exceptionally fine weather.

That defendant had never exhibited to them an account of his current expenses; that although he had drawn money for the purpose of paying his labor, he had failed to do so, and owed largely on that item for the same; that in violation of his co tract and in fraud of plaintiffs' rights he had used the money advanced to under-cut timber, and to prepare to *float* the same during the coming spring in case of a sufficient flood so to do, when by the calls of the contract he was to *haul* the same; that to these and other purposes he had fraudulently diverted the advances made him to carry on his contract.

That defendant had hauled one hundred and sixty-five thousand

feet of timber which had been measured and rolled in the bayou, and. that he had on the banks fifty thousand feet to be measured and rolled in said bayou. That it would cost about two hundred and. fifty dollars to roll, raft and float all of said timber to the mouth of. the bayou at the point of delivery.

That defendant insisted that the plaint ffs were bound under the contract to advance him money without limit, and declared that he would deliver timber when he was ready and when it suited his convenience. Plaintiffs claiming that they had a privilege on the timber then in and on the banks of the bayou, and on the movables advanced to Lorio, to the extent of two thousand two hundred and thirty-four dollars and twenty-three cents, and averring that they verily believed and feared that defendant would part with and dispose of said movables in his possession, and upon which they had a lien during the pendency of the suit, prayed for and obtained an order for the sequestration of the same. A claim for damages was set up by the plaintiffs, but no special reference to it is necessary, as it has been substantially abandoned in this court.

The sequestration ordered having been executed by seizure of a number of logs and other movables belonging to defendant, it was released on bond furnished by the latter.

Plaintiffs subsequently filed an amended petition, in which they prayed that the contract be set aside, annulled and avoided on account of the wrongful, tortious and illegal acts of defendant.

Defendant pleaded the general issue, but further answering admitted that he entered into the contract declared upon. He averred that soon after the same he went to work to carry out his part of the agreement; that he cut and hauled from his land to the banks of the bayou about two hundred thousand feet of timber, ready to be delivered at the mouth of the bayou as soon as the stage of water would permit of floating it; that in further compliance with his part of the agreement he caused to be deadened three thousand cypress trees on his lands for the purpose of having them cut and hauled to the bayou, to be delivered to the plaintiff as stipulated; that during the month of January and early part of February, 1893, in view of the fact that plaintiffs had ceased to make the necessary advances to enable him to carry out his contract, he made frequent demands on plaintiffs to make said advances and to furnish him with the funds required for the prosecution of the work; that the officers of the

company, when they entered into the contract, knew that the disbursement of large sums of money would be required to deaden, cut and haul so vast a quantity of timber to the banks of the bayou, notwithstanding which the company ceased to make advances for that purpose, and persisted in their refusal to do so, ignoring and disregarding his demands; that on the 9th of February, 1893, he caused to be served a written notice and demand to the end of formally putting the company in default for non-compliance with and acting in violation of their obligations under the contract; that he had been at all times ready and willing to comply with all of his obligations under the contract, and that he had been prevented from continuing the prosecution of work solely by the wrongful neglect and failure of plaintiffs to perform their obligations; that the active and wrongful violation of the contract had caused, and will cause, him great damage and injury; that the deadened trees on defendant's land, so deadened on the faith of plaintiffs' obligations, are subject to deterioration and decay, and ultimate loss; that by plaintiffs' failure to comply with their obligations and repudiation of their contract he will be deprived of the profits which would have accrued to him under the contract; that said profits embracing the delivery of five million feet of timber to defendant would amount to two dollars per thousand feet and to ten thousand dollars for the quantity of timber covered by said contract, which sum he is entitled to recover; that the deterioration and decay of the three thousand deadened trees would involve a loss to him of four thousand dollars, which amount he is also entitled to recover. Defendant prayed that plaintiffs' demand be rejected, and assuming the position of plaintiff in reconvention he prayed that plaintiffs be adjudged to have wrongfully and actively violated their contract, and by their wrongful acts to have annulled the same, and that he have judgment for the sum of ten thousand dollars as damages for the loss of profits which would have accrued to him under said contract, and for the further sum of four thousand dollars as damages for the loss occasioned and involved in the deterioration and decay of the deadened trees.

The District Court rendered judgment in favor of the plaintiffs, against the defendant, for the sum of two thousand two hundred and thirty-four dollars and interest, with privilege to secure the sum of seventeen hundred and thirty-four dollars and interest thereon, as being for moneys and materials furnished by the plaintiffs on one

hundred and sixty-five thousand feet of cypress logs in Bayou Maringouin, and fifty thousand feet of cypress logs on the banks of said bayou, on two pair of timber wheels, three oxen, two hundred and ninety-seven chain-dogs. The judgment annulled, avoided and set aside the contract, and set aside and dissolved and avoided the sequestration decreeing that all the costs incurred by virtue of the writ of sequestration and the seizure thereunder be paid by the plaintiffs. It further dismissed the claim of both parties for damages, reserving to defendant his right of action for any damages caused by the wrongful issuing of the writs and the seizure.

The plaintiffs appealed. Defendant in answer to the appeal prayed that plaintiffs' entire demand be rejected, that the contract referred to in the pleadings be avoided and set aside on his (defendant's) demand, and not on that of plaintiffs'; that he have judgment for damages as prayed for in reconvention, and that the costs of both courts be cast upon the plaintiffs.

Both sides having asked the setting aside of the contract, the judge's action in so doing was correct. The only question touching this action is as to the party at whose instance the avoidance must be properly held to have been made. Defendant contends, as we have just said, that the contract should have been set aside on his prayer.

The avoidance of the contract finds the parties in this situation: Defendant has received from the plaintiffs a quantity of movables which he still holds and owns. He has received from them over two thousand dollars. By common consent and understanding, five hundred dollars of this sum were applied by defendant to his household expenses; the balance was expended by him deadening, cutting and hauling timber on his land to the banks of the bayou. The number of trees deadened, cut and hauled and now in his possession is represented by over two hundred thousand feet of timber in the bayou on his land and on the bayou bank—the number of deadened trees still standing on his land is about three thousand. This is the defendant's position. Plaintiffs, on the other hand, have up to date paid out the money and furnished the supplies mentioned, and not only have not received anything by way of return, but are confronted with a large claim for damages.

We have examined the record with great care to see whether this unequal condition of affairs was brought about by the conduct of

the plaintiffs themselves. It will serve no good purpose to enter minutely into the testimony. It suffices to say that, in our opinion, defendant's complaints are not only without merit, but, on the contrary, his cause has been unjustifiable and his demands unreasonable. There is nothing in the contract to warrant defendant in the pretension that plaintiffs were to continue to furnish him with money and supplies, either until he should have deadened enough trees on his land to furnish five million feet of timber, or until he should have done this and should besides have cut and hauled the same to the bayou. With over two hundred thousand feet of timber on the banks of the bayou, ready for measurement and shipment (the product of the advances made by the plaintiffs), defendant was not warranted in attempting to hold on to the same on the ground that plaintiffs had ceased to make advances under the contract. The contract is indefinite, both as to the quantity of timber which defendant was to furnish and the money and supplies plaintiffs were to advance, but it was clearly in contemplation of the parties that the furnishing of the latter and the delivery of the timber were to go on, if not simultaneously, at least with reasonable relations, one to the other. Whilst it might have suited the defendant to continue indefinitely to deaden trees without delivering timber, this certainly would not have suited the plaintiffs, whose outlays were made with reference to prompt returns. We think plaintiffs did all that they could have been expected to have done in the way of advances. The personal judgment in their favor, and that rejecting defendant's claim for damages under the contract, must stand.

Plaintiffs' object in taking the appeal was to obtain a reversal of that portion of the judgment dissolving the sequestration and reserving to defendant a right of action for any damages caused by the wrongful issuance of the writ of sequestration and to obtain a judgment in this court sustaining and maintaining the sequestration.

We concur with the District Court in its conclusions that plaintiffs' claim is to extent of one thousand seven hundred and thirty-four dollars and twenty-three cents, secured by privilege upon the logs, but we do not think the privilege covers strikes and the timber wheels, the oxen or the chain dogs. These articles are themselves part of the supplies for the furnishing of which we have recognized privilege on the logs. See McRae vs. His Creditors, 16 An. 306.

The district judge does not state upon what ground he dissolved

the sequestration. There was no motion made to dissolve it. The affidavit seems to be in due form and the allegations of the petition appear sufficient to justify the writ. Johnson vs. Johnson, 13 An. 581.

Defendant does not present to this court any reasons going to show error in the order for the sequestration, and we think it should have been maintained as to the logs, though not as to the other movables, which as we have stated were not struck by privilege.

For the reasons herein assigned it is ordered, adjudged and decreed that the judgment appealed from be reversed and set aside in so far as it dissolved the sequestration issued in this case and reserved to defendant a right of action for any damages caused by the wrongful issuance of the writ of sequestration.

It is further ordered, adjudged and decreed that the judgment be amended in so far as it recognizes a privilege upon the timber wheels, the oxen and the chain dogs; the privilege claimed on the said movables being hereby denied.

It is further ordered, adjudged and decreed that the writ of sequestration which issued herein be and the same is sustained and maintained upon the property sequestered except as to the timber wheels, the oxen and the chain dogs, and the said sequestration is reinstated.

It is further ordered, adjudged and decreed that the judgment, except as to the particulars herein above amended and reversed, be and the same is hereby affirmed.