No. 3753

Second Circuit

———

UNITED FURNITURE STORES, INC., v. ROGERS ET AL.

———

(July 5, 1930.   Opinion and Decree.)
(October 2, 1930.   Rehearing Refused.)

———

Harry V. Booth and Hoye Grafton, of Shreveport, attorneys for plaintiff, appellant.

Cook & Cook and C. D. Egan, of Shreveport, attorneys for defendants, appellees.

DREW, J. The petition alleges that the plaintiff sold to one Mrs. Parks a cookstove and some blankets, on the part cash and part credit basis, which is usual to furniture stores, and that after the sale there remained a balance due to the plaintiff from Mrs. Parks of $32. The petition further alleges that the defendant Rogers, acting for himself and for the co-defendant, the Cut Rate Furniture Store, of which he was alleged to be the proprietor, entered the home of Mrs. Parks, without her permission, and removed therefrom the stove and blankets sold to Mrs. Parks by the plaintiff, and disposed of the same. The petition further alleges that the plaintiff had an unrecorded chattel mortgage upon the stove and a vendor's lien upon both the stove and the blankets. It is alleged that the action of defendant in taking these articles without the permission of Mrs. Parks destroyed the chattel mortgage and vendor's lien of the plaintiff and damaged the plaintiff in the sum of $182, which is itemized in the plaintiff's petition as follows:

| | |
|---|---:|
| Attorney's fees | $ 50.00 |
| Loss of time and inconvenience to its agents and employees in investigating and tracing the merchandise in question | 100.00 |
| Value of merchandise | 32.00 |
| Total damage | $182.00 |

The plaintiff sought judgment in the amount of $182.

The defendant set up in his answer that he is the owner of a rooming house in the part of Shreveport, La., which was formerly the city of Cedar Grove, and that the Mrs. Parks referred to in plaintiff's petition was a tenant in that rooming house, and also that the said Mrs. Parks had purchased from the Cut Rate Furniture Store, which is owned by the wife of the defendant Rogers, and of which he is the manager, certain articles of furniture. The defendant further sets up that Mrs. Parks was indebted to the Cut Rate Furniture Store for balance due upon the said articles of furniture, and that she was indebted to him, individually, in the sum of $12 for room rent in the rooming house owned by him. Rogers further sets up that Mrs. Parks came to him and told him that she was unable to meet the credit payments due to the Cut Rate Furniture Store and requested him to repossess the said articles of furniture sold to her by the Cut Rate Furniture Store, and, in consideration therefor, to release her from further obligation to pay for the said furniture. This Mr. Rogers agreed to do, and at the same time he and Mrs. Parks discussed the question of her indebtedness to him for room rent, and Mrs. Parks informed him that she had, in addition to the articles of furniture, purchased from the Cut Rate Furniture Store a certain cookstove, and she authorized him to take this stove and apply same on her indebtedness for room rent. With the authorization above referred to, Mr. Rogers sent a truck of the Cut Rate Furniture Store to Bossier and took the articles of furniture that Mrs. Parks had purchased from the Cut Rate Furniture Store and also the stove, which is the basis of this suit. Defendant Rog-

ers further alleges that he sold the stove to a customer who returned it because of its unsatisfactory condition; that it was not worth in excess of $5.

There is no proof in the record in regard to the blankets alleged on, and the sole question before the court is relative to the stove.

The lower court rejected the demands of plaintiff, and, from that judgment, plaintiff has appealed.

The sole question before the court is whether or not the taking possession of the stove by defendant Rogers was unlawful, or was he authorized by Mrs. Parks to take the stove and apply same on her personal indebtedness to him?

The only testimony in the record on this point is that of defendant Rogers and Mrs. Parks. Rogers testified that Mrs. Parks authorized him to take back the goods sold to her by the Cut Rate Furniture Store for the unpaid balance and for him to take the stove and apply same on her debt to Rogers, personally. Mrs. Parks testified that she authorized Rogers to take possession of the goods she had purchased from the Cut Rate Furniture Store for the unpaid balance, but did not say anything about the stove. Mrs. Parks had left and moved from the place in Bossier where the goods were, and, when defendant sent for them, the house was open. It seems strange that Mrs. Parks should have left the stove without giving anyone authority to remove it, and, if she had not intended for Rogers to get it, it seems that she would have gone to plaintiff and authorized it to take back its goods for which

she had failed to pay, as she had done with defendant. This she did not do.

This question involves purely a question of fact, and the lower court decided it in favor of the defendant. We do not think he erred in that respect.

It is incumbent upon the plaintiff to make out its case with a preponderance of evidence and give equal credibility to the two witnesses. It has failed to make out its case. The lower court saw and heard these two witnesses and was in a better position to judge their credibility than is this court, and the lower court found in favor of defendant.

To decide this question of fact is to decide the case and makes it unnecessary to discuss the right to recover for the different items of damage prayed for. For if defendant was authorized to take possession of the stove and apply same on his debt against Mrs. Parks, the plaintiff has no case against defendant. Plaintiff to a chattel mortgage against the stove, but failed to record it, and a vendor's privilege unrecorded is unenforceable against a third person who has acquired the property in good faith. There is no proof that Rogers knew of the chattel mortgage and vendor's privilege against this stove, and he says he did not know of it.

We see no reason to disturb the finding of the lower court. It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.