No. 3457

Second Circuit

(Second Division)

---

## RAINS v. THOMASON & CHAMPION

---

(June 11, 1931. Opinion and Decree.)
(July 16, 1931. Rehearing Refused.)

---

Ponder & Ponder, of Many, attorneys for plaintiff, appellee.

Boone & Boone, of Many, attorneys for defendant, appellant.

TALIAFERRO, J. Plaintiff instituted this suit against the commercial partnership of Thomason & Champion, composed of M. C. Thomason and V. E. Champion, alleged to be nonresidents of the state of Louisiana, to recover $606, with interest, the price of 33 head of cattle, and to enforce the vendor's lien and privilege thereon. Writs of sequestration and attachment were prayed for and issued under which the sheriff of Sabine parish seized 33 cattle claimed to be those for which the $606 was due. There was personal service on both members of the defendant firm while in Sabine parish.

M. C. Thomason, through counsel, appeared and filed application to bond the sequestration and attachment, alleging that the cattle seized thereunder belonged to him. He furnished bond for the amount fixed by the court, and the cattle were released to him. Under reservations, he filed exception of nonjoinder of parties, alleging that the minor son of George Rains, deceased, should be a party plaintiff, and also filed motions to dissolve the writs of sequestration and attachment on the grounds that there was no proper bond for either writ in that the bonds given were not verified as required by law, and

further that the allegations made to secure issuance of said writs were untrue.

The exception of nonjoinder was over-ruled, while the motions to dissolve were referred to the merits of the case.

Defendant Thomason, reserving his rights under exceptions and motions by him filed, answered. He denies that he is due plaintiff any amount, and avers his business relationship with his codefendant, V. E. Champion, to be: "That said Champion was to buy and deliver cattle to your defendant, who agreed to pay for same and sell same and divide the profits equally."

He denies that the 33 head of cattle in question were purchased by Champion from Rains, and therefore the check on his bank at Center, Texas, for $606, asserted price thereof, was not paid. He avers that said Champion and George Rains were pasturing cattle and working together, and lacked 73 head of cattle delivering the number he paid for. He admits that he is a nonresident of Louisiana. By a supplemental answer this defendant sets forth that he paid for all cattle he purchased from plaintiff and her deceased husband, in fact, by error, overpaid them $100, for which amount, in reconvention, he prays for judgment.

Defendant Champion did not appear or file answer. Default was entered against him.

After the issues were thus joined, plaintiff filed an amended petition praying for issuance of an alias writ of attachment on grounds of nonresidence of Thomason, and for garnishment process, alleging that J. B. Vandegaer, resident of Sabine parish, had property in his possession belonging to, or was indebted unto, the defendants, or some of them. Usual order by

the court issued on this petition and interrogatories propounded to and served on the garnishee. The garnishee answered the interrogatories, under oath, and thereafter plaintiff moved to traverse these answers and sued out a rule against him to show cause why the answers should not be set aside as evasive and, in effect, untrue. This rule does not appear to have been tried. Defendant Thomason moved to dissolve the alias writ of attachment on ground that allegations therefor are untrue and insufficiency of bond.

The principal issue in this case is one of fact. It is: Were the cattle sequestered part of the herd of 173 which Champion, acting for the partnership, agreed to purchase from George Rains on or about August 11, 1927? If this question be answered in the affirmative, then plaintiff had the undoubted right to have them seized under vendor's lien and privilege to secure the purchase price unpaid, evidenced by a dishonored check. The lower court gave judgment for plaintiff. Defendant Thomason appealed.

We have carefully read the record in the case, and are convinced the judge of the lower court correctly resolved the facts. The summary of the facts of the case contained in the lower court's judgment is adopted by us. It is as follows:

"Thomason and Champion were engaged in the cattle business, or buying and selling cattle. Thomason resided in Texas and, it seems that Champion had also been with him, but sometime before this suit and at the time, was residing in Sabine Parish, Louisiana. Champion was doing the buying in this State and his partner Thomason was furnishing the money. In fact it seems from the evidence that Champion had all authority to buy cattle and sell them and to pay by checks and drafts on Thomason. Thomason usually got the cattle purchased by Champion and sold them and some time he would send

men in Sabine Parish to buy cattle from him and Champion that had been bought by his partner Champion. Champion had been buying cattle for some time from the deceased husband of the plaintiff. It seems that the husband of plaintiff had sold them cattle on several occasions during the year of 1927. The husband of plaintiff just before his death had sold Champion 173 head of cattle. There was paid the sum of $500.00 down on same and at a later date there was another payment made to George Rains of $1300.00 which made a total of $1800.00 and from the evidence this amount was for the payment of 100 head of the 173 sold to the defendants. After the death of the husband of the plaintiff there was another payment of $720.00 which from the evidence was for another 40 head of the 173. The balance unpaid for was 33 head of cattle for which the said Champion gave a draft on Thomason for the sum of $606.00, which draft was turned down by Thomason. Champion testified that this draft was for the balance due and for the payment of the cattle or 33 head branded with a letter R. This is the contention of the plaintiff that the last 33 head of cattle sold to the defendant was never paid for except by the draft which was turned down and she has brought this suit for said amount. Champion was in a position to know more about the facts in the case than did his partner Thomason. Neither Champion nor Thomason were known to the Court before the trial but there was nothing to impeach the testimony of either of them and that being the case the Court accepts the testimony of Champion for the reason that he knew more about the details of the trade made. Mr. Thomason contends that he had paid another check for $445.00 which was the purchase price of 22 head of the cattle in question. He does not account for the payment of the other 11 head which would compose the 33 head, in fact he does not know just how and when they were paid for. Champion testified that the 22 head, which Thomason said was paid for by check for $445.00, were bought to make up another shipment and was a different trade with George Rains from the purchase of the 173 head. In view of the fact that these 22 head were shipped by Thomason to Houston a few days before the first payment on the 173, or about two days of the time, the facts lend weight to the evidence of Champion on this point. It is possible that Thomason did not and does not yet know the number and kind of cattle that was bought by Champion, but that should not be a matter between the plaintiff and them in this case; it is matter of adjustment between the partners. After consideration of all the evidence in the case it is the opinion of the Court that the 33 head of cattle sequestered in this suit had not been paid for and that the partnership of Thomason and Champion owed the plaintiff for them or the sum of $606.00 as shown by the draft filed in evidence. The plaintiff had a right to sequester the cattle and had a lien and privilege upon them for the balance of the purchase price of $606.00 and said writ should be and is hereby sustained and the motion to dissolve the writ is overruled. The cattle were being removed or would be removed and one of the parties was a non-resident and it was necessary for a writ of attachment to issue or the plaintiff was entitled to same under the facts and the original writ of attachment with the alias writ of attachment and garnishment thereunder should be sustained and the motions to dissolve same are overruled."

Counsel for Thomason, in brief, seriously argue the exception of nonjoinder and the reconventional demand.

It appears that George Rains, husband of plaintiff, died on August 24, 1927, before the sale of the 173 cattle was finally consummated by payment of the entire price thereof. His widow, plaintiff, carried out the contract by receiving checks to discharge that part of the price not paid to her husband. The check of $606 sued on is in her favor. The exception of nonjoinder alleges that George Rains left one child, a minor son, who should be made a party to this suit. This exception was overruled by the lower court. There is no note of evidence taken on trial of the exception in the record before us, and, under

these circumstances, we cannot say that the ruling of the trial judge on the exception is not correct.

As regards the reconventional demand, the lower court said nothing in its judgment which is equivalent to rejection.

The evidence on the question of the $100 involved in the reconvention is this: That Champion advanced to a man by the name of Smith this amount by partnership check on the bank at Center, Texas, who paid the amount to George Rains as good-faith money to bind an agreement between Smith and Rains for the purchase of some cattle. Smith defaulted in his agreement to take over the cattle and pay the price, and Rains retained the money as a forfeit. Certainly plaintiff is not responsible in any way for the amount.

We are also urged by defendant to dissolve the writs of sequestration and attachment sued out by plaintiff. For the reasons given in the judgment of the lower court, which we adopt, the writ of sequestration was properly sustained. It is different as respects the writs of attachment. However, as the same property was levied on by the sheriff under both writs (sequestration and attachment), small relief will follow a dissolution of the attachments.

It is admitted by both sides that the relationship of Thomason and Champion was one of commercial copartnership. Thomason lived in Texas, while Champion had lived in Sabine parish, La., for over one year, and the partnership business and activities were carried on in that parish by Champion. Under these circumstances the partnership could not legally be proceeded against as a nonresident of the state. Weil Bros. & Bauer v. C. N. Adams & Son, 126 La. 532, 52 So. 757.

Defendant claimed damages for the wrongful issuance of the original writ of attachment for $50 as attorney's fees. No proof was introduced in support of this claim.

The lower court sustained the garnishment process, but gave no judgment against the garnishee in its decree.

For the reasons herein assigned, the writs of attachment sued out by plaintiff are dissolved and set aside, and the garnishment process issued under the alias writ of attachment is also annulled and set aside. In all other respects, and as amended hereby, the judgment appealed from is affirmed.

It is further ordered and decreed that costs of appeal and costs of issuance of said writs of attachment and garnishment process be paid by plaintiff; all other costs to be paid by defendants.