In the Matter of Caldwell Joseph
**TRAHAN.**
**No. 16702.**

United States District Court
W. D. Louisiana,
Lafayette Division.
April 12, 1968.

Bean & Rush, Warren D. Rush, Lafayette, La., for bankrupt.

Mouton, Champagne, & Colomb, George J. Champagne, Jr., Lafayette, La., for Beneficial Finance Co.

Archie M. Simon, Shreveport, La., amicus curiae.

Rodney Bernard, Jr., Lafayette, La., trustee.

PUTNAM, District Judge.

This case presents for review the question of whether or not the vendor's privilege afforded to the seller of merchandise under the law of Louisiana (LSA–C.C. art. 3227) is a statutory lien valid against the trustee in bankruptcy under the Bankruptcy Act, Sections 1(29a), 67(b) and (c), and 70(c), as amended July 5, 1966, P.L. 89–495, 11 U.S.C.A. §§ 1(29a), 107(b) and (c), and 110(c). The Referee held that it was not and allowed the trustee's claim for costs to be satisfied in preference to that of the creditor, Beneficial Finance Company (hereinafter referred to as Beneficial).

Beneficial is the assignee of the note of a furniture store dealer who sold the bankrupt certain items of furniture on credit, with reservation of the vendor's privilege, on which there is a balance due of $299.10. The property was in the possession of the bankrupt at the time his petition was filed. See, Bankruptcy Act, Section 1(13); 11 U.S.C.A. § 1(13). Resolution of this case involves a consideration of the method of distribution of the assets of the bankrupt, provided for by the Bankruptcy Act, and of the nature of the Louisiana "vendor's privilege".

■■ It is the policy of the Act to allow secured creditors, those having *liens* upon the assets of the bankrupt, to have their claims recognized first; and the Act does not seek to jeopardize this secured status except where that intent is clear. Section 67(b) and (c), as amended; 11 U.S.C.A. § 107(b) and (c). See, Commercial Credit Co. v. Davidson, 112 F.2d 54 (5 Cir. 1940); In Re Brannon, 62 F.2d 959 (5 Cir. 1933); In Re Polumbo, 271 F.Supp. 640 (W.D.Va. 1967); In Re Empire Granite Co., 42 F.Supp. 450 (M.D.Ga.1942); Tatum v. Acadian Production Corp., 35 F.Supp. 40, 48 (E.D.La.1940); Collier on Bankruptcy, Vol. 4, § 67.02 at p. 34, § 67.20[1] at p. 211, and § 67.25[1] (14 ed. 1967); Senate Rep. No. 1159, U.S.Code Cong. & Admin.News, Vol. 2, p. 2467 (1966). However, there is also a policy against allowing those creditors whose only security is a *state-created priority* which is not a "lien" to assert their "priority" claims as secured claims against the assets. Elliott v. Bumb, 356 F.2d 749 (9 Cir. 1966); Strom v. Peikes, 123 F.2d 1003, 138 A.L.R. 937 (2 Cir. 1941). This policy was strengthened by the 1966 amendments to the Act. Collier, supra, Vol. 4, § 67.20[2] at p. 219 and n. 16d, § 67.20[3] at pp. 227–228; Senate Rep. No. 1159, U.S.Code Cong. & Admin.News, supra, pp. 2457, 2461, 2467. If the petitioner has a lien recognized in bankruptcy, then his claim primes that of the

trustee; a claim based upon a priority would not.

■ Decision of the case at bar depends in part upon federal law and in part on the law of Louisiana. It is the state law that determines the nature of the vendor's privilege; but it is the Bankruptcy Act which determines whether or not a right of that nature is a secured claim in bankruptcy. Halpert v. Industrial Commissioner of State of New York, 147 F.2d 375 (2 Cir. 1945); Commercial Credit Co. v. Davidson, supra, p. 55; In Re Brannon, supra. Collier, supra, Vol. 4, § 67.20[2] at pp. 219–220, § 67.25[1] at pp. 347–348. The courts apply this principle in City of New Orleans v. Harrell, 134 F.2d 399 (5 Cir. 1943); Strom v. Peikes, supra; Brown Shoe Co. v. Wynne, 281 F. 807 (5 Cir. 1922) (Mississippi vendor's lien); Norris v. Trenholm, 209 F. 827 (5 Cir. 1913) (Mississippi vendor's lien).

■ This case hinges upon an interpretation and application of Sections 67(b) and (c) (1) (A) and (B), and 70(c) of the Bankruptcy Act.[1] Section 67(b) of the Act provides that "statu-

---

1. Section 67(b), (c) (1) (A) & (B):

"(b) The provisions of section 96 of this title to the contrary notwithstanding and except as otherwise provided in subdivision (c) of this section, statutory liens in favor of employees, contractors, mechanics, or any other class of persons, and statutory liens for taxes and debts owing to the United States or to any State or any subdivision thereof, created or recognized by the laws of the United States or any State, may be valid against the trustee, even though arising or perfected while the debtor is insolvent and within four months prior to the filing of the petition initiating a proceeding under this title by or against him.

"(c) (1) The following liens shall be invalid against the trustee:

(A) every statutory lien which first becomes effective upon the insolvency of the debtor, or upon distribution or liquidation of his property, or upon execution against his property levied at the instance of one other than the lienor;

(B) every statutory lien which is not perfected or enforceable at the date of bankruptcy against one acquiring the rights of a bona fide purchaser from the debtor on that date, whether or not such purchaser exists: *Provided*, That where a statutory lien is not invalid at the date of bankruptcy against the trustee under subdivision (c) of Section 70 of this Act and is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, such a lien may nevertheless be valid under this subdivision if perfected within the time permitted by and in accordance with the requirements of such law: *and provided further*, That if applicable lien law requires a lien valid against the trustee under section 70(c) of this title to be perfected by the seizure of property, it shall instead be perfected as permitted by this subdivision by filing notice thereof with the court. * * *"

Section 70(c):

"(c) The trustee may have the benefit of all defenses available to the bankrupt as against third persons, including statutes of limitation, statutes of frauds, usury, and other personal defenses; and a waiver of any such defense by the bankrupt after bankruptcy shall not bind the trustee. The trustee shall have as of the date of bankruptcy the rights and powers of: (1) a creditor who obtained a judgment against the bankrupt upon the date of bankruptcy whether or not such a creditor exists, (2) a creditor who upon the date of bankruptcy obtained an execution returned unsatisfied against the bankrupt, whether or not such a creditor exists, and (3) a creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, whether or not such a creditor exists. If a transfer is valid in part against creditors whose rights and powers are conferred upon the trustee under this subdivision, it shall be valid to a like extent against the trustee. In cases where repugnancy or inconsistency exists with reference to the rights and powers in this subdivision conferred, the trustee may elect which rights and powers to exercise with reference to a particular party, a particular remedy, or a particular transaction, without prejudice to his right to maintain a different position with reference to a different party, a different remedy, or a different transaction."

tory liens" will be recognized as secured claims in bankruptcy, so long as they are not excluded by the provisions of Section 67(c). Statutory liens are defined for the first time by Section 1 (29a), 11 U.S.C.A. § 1(29a), added by the 1966 amendment, as follows:

> " 'Statutory lien' shall mean a lien arising solely by force of statute upon specified circumstances or conditions, but shall not include any lien provided by or dependent upon an agreement to give security, whether or not such lien is also provided by or is also dependent upon statute and whether or not the agreement or lien is made fully effective by statute." (As amended July 5, 1966.)

This definition is broad in its scope, and it has been said that a statutory lien is "one arising 'primarily from an economic relationship defined by the legislature'." Lawrence v. United States, 378 F.2d 452, 467 (5 Cir. 1967). In Re New Haven Clock & Watch Co., 253 F.2d 577 (2 Cir. 1958); Collier, supra, Vol. 4, § 67.20[2], p. 217. See, Collier, supra, Vol. 1, § 1.00, p. 47 (1967 cumulative supplement).

■ Adhering to concepts of "mortgage" and "privilege", the Louisiana Civil Law system provides security devices to certain classes of persons which, in the common law, might be called *liens*. The vendor's privilege cannot be excluded from definitional coverage under Section 1(29a) merely because Article 3227 uses the word "privilege" instead of "lien"; the nature of privilege, though different from that of the *common law lien*, is close to that of a *statutory lien*; the concepts being similar, the words are often used interchangeably. Daggett, *Louisiana Privileges and Chattel Mortgages*, § 1 at p. 1, § 2 at pp. 4–5 (1942); Dainow, "Vicious Circles

in the Louisiana Law of Privileges," 25 La.Law Rev. 1, n. 1 (1964); Slovenko, "Of Pledge," 33 Tul.Law Rev. 59, 60 (1958); 53 C.J.S. Liens § 1 d, p. 833; *Black's Law Dictionery*, "LIEN: Roman or Civil Law" (4 ed. 1951).

There have been cases in which the bankruptcy courts have recognized the vendor's privilege as a secured claim or "lien" in bankruptcy. Clyde Iron Works v. Frerichs, 203 F. 637 (5 Cir. 1913); In Re Bentz, 267 F. 606 (E.D.La.1920) (reversed on other grounds, Sherer-Gillett Co. v. Pilsbury, 269 F. 595 (5 Cir. 1921)); In Re New Orleans Milling Co., Inc., 263 F. 254 (E.D.La.1920). See, Sessler v. Paducah Distilleries Co., 168 F. 44 (5 Cir. 1909); In Re Smith, 51 F.2d 290 (S.D.Miss.1931); Globe Automatic Sprinkler Co. v. Bell, 183 La. 937, 165 So. 150 (1936); Lehman, Stern & Co. v. E. Martin & Co., 132 La. 231, 61 So. 212 (1913) (affirmed, 236 U.S. 448, 35 S.Ct. 307, 59 L.Ed. 666 (1914)); Alphonse Brenner Co. v. Owens, 17 La. App. 294, 136 So. 122 (1931). Compare, Marshall v. Knox, 16 Wall. 551, 21 L.Ed. 481 (1872) (which involved a Louisiana lessor's privilege); Arkansas Fuel Oil Co. v. Leisk, 133 F.2d 79 (5 Cir. 1943) (which involved the Louisiana privilege in favor of carriers).

■ We conclude that a vendor's privilege meets the definitional requirements of Section 1(29a), because it is a "statutory lien" which arises by operation of law upon the happening of a specified circumstance. LSA–C.C. arts. 3186, 3227.[2] It would not fall under the exclusionary provision of Section 1(29a), because it can not be created by agreement of the parties. It results from the nature of the debt and arises only by operation of law. LSA–C.C. art. 3185. Daggett, supra, § 37, p. 96; Planiol, *Traité Élémentaire De Droit Civil*, No.

2. La.Civ.Code Art. 3227:
   "He who has sold to another any movable property, which is not paid for, has a preference on the price of his property, over the other creditors of the purchaser, whether the sale was made on a credit or without, if the

property still remains in the possession of the purchaser.
   "So that although the vendor may have taken a note, bond or other acknowledgment from the buyer, he still enjoys the privilege. * * * "

2544, pp. 425–426 (11 ed. 1939, trans. Louisiana State Law Institute, 1959); Bonomo, *Saunder's Lectures on the Civil Code*, p. 503 (1925); Dainow, "Ranking Problems of Chattel Mortgages and Civil Code Privileges in Louisiana Law," 13 La.Law Rev. 537, 545 (1953).

Having concluded that the vendor's privilege is a "statutory lien", as that term is defined by the Bankruptcy Act, we now turn to Sections 67 and 70(c) for resolution of the remaining issue before us. We have found no case law interpreting this recently amended section and applying it to the Louisiana vendor's privilege. The problem is *res nova* and requires our considered attention.

Because of circuity of liens resulting from the application of State law to determine the rank of statutory liens created by State legislatures in many fields, Congress felt a need to protect the order of distribution of proceeds of the bankrupt's estate as provided for in the Act; the 1966 amendments are the consequence. Statutory liens which do not meet the requirements of 67(c) are not given secured status; for the purposes of the Act, they are state-created priorities, not recognized in bankruptcy.[3]

Senate Rep. No. 1159, U.S.Code Cong. & Admin.News, supra, p. 2456 et seq. See, Collier, supra, Vol. 4, § 67.02 at p. 34, § 67.20[1] at p. 211, § 67.20[2] and n. 16d at pp. 219–220, § 67.20[3.1] at p. 228. A statutory lien will be viewed as such a priority when (1) it does not become effective until the debtor is insolvent or his property is being distributed or liquidated, or (2) it does not become effective until another creditor seeks execution of a claim against the property (Section 67(c) (1) (A)), or (3) it would not be enforceable against a *bona fide purchaser* (Bankruptcy Act, Section 1 (5); 11 U.S.C.A. § 1(5)) on the date of bankruptcy, provided that if the lien is not invalid under Section 70(c), then the lienor may constructively seize the property (by filing notice with the court) or otherwise perfect the lien against the fictitious bona fide purchaser (Section 67(c) (1) (B)).[4]

The tests provided for by Section 67 (c) (1) (A) are self-explanatory. The "bona fide purchaser test" of 67(c) (1) (B) with its reference to Section 70(c), has been explained as follows:

"It is clear * * * that the enforceability of the statutory lien depends upon its state of perfection as

---

**3.** Counsel for the trustee and amicus curiae argue forcefully that the vendor's privilege is not a true lien or real right against the thing subject thereto, hence it is a mere "priority". Great reliance is placed on New Orleans Terminal Co. v. Hanson, 188 F. 638 (6 Cir. 1911), and the comments of Planiol, supra, Vol. 2, Part 2, §§ 2606, 2608, 2609, 2618, 2619 and 2620. We do not believe that whether this privilege is a real right or not is necessary to this decision. The question here is to be determined by reference to Section 67(c) of the Bankruptcy Act and the definitions contained in the Act. With all deference to the Court in *Hanson*, however, it must be pointed out that that case involved an interpretation of the Louisiana law in a conflict of laws setting, and an opposite result might well be reached in Louisiana, applying its own law for application within its territorial limits. The eminent French commentator, Planiol, espoused the minority view in France, the majority

view being that the creditor having a vendor's privilege enjoyed a real right to proceed against the property subject thereto, under the corresponding Article of the French Civil Code, 2102 (4). The Louisiana jurisprudence tends to favor the majority view in France. See: Carlin v. Gordy, 32 La.Ann. 1285 (1880); Yiannopolis, 1 *Louisiana Practice: Civil Law of Property*, § 106, § 108 at pp. 322–323 (1966); Daggett, *Louisiana Privileges and Chattel Mortgage*, § 39 at p. 94, § 51 at p. 134 (1942); Margolin, "Civil Law: Vendor's Privilege," 4 Tulane Law Review 239 (1929–30).

**4.** It is worthy of note that "possession" by the lienor is no longer a prerequisite to assertion of secured status under Section 67(c). U.S.Code, Congressional & Administrative News, Vol. 2, p. 2462 (1966); Collier on Bankruptcy, Vol. 4, § 67.20[3.1] at p. 229, § 67.20[5.1], § 67.27[1.1] at p. 374, § 67.281[2] at pp. 416–417.

of the date the petition is filed. Have the necessary steps been taken, by that date, to make the lien enforceable against a bona fide purchaser? That is the question to determine its validity.

"A saving provision is included in clause (B) by the first proviso which permits perfection after the date of bankruptcy in some instances. This is where the lien has not yet been perfected to be enforceable against a bona fide purchaser but time is still permitted by state law for performing that particular act of perfection. In order to avail itself of this saving provision, however, the proviso requires that the lien be valid against the trustee under § 70c at the date of bankruptcy. For example, if state law creates, under prescribed circumstances, a statutory lien which is enforceable on particular property without recordation or any other act against judicial lien creditors but requires public filing, possession, levy, commencement of a legal proceeding or some act for it to be enforceable against bona fide purchasers, a case involving the first proviso could be presented." Collier, supra, Vol. 4, § 67.281[2.2], pp. 422–423.

And:

"The first sentence of § 70(c) insures that the trustee may make use of all the bankrupt's defenses that might otherwise be considered personal and hence not available to the trustee. The second sentence purports to confer certain statuses upon the trustee as of the date of bankruptcy—the status of a judgment creditor, the status of a creditor who obtained an execution returned unsatisfied, and the status of a creditor then holding a lien by legal or equitable proceedings as to all property upon which a creditor of the bankrupt could have obtained such a lien at bankruptcy." Collier, supra, Vol. 4a, § 70.45, p. 558.

The Court must apply these tests to the vendor's privileges as that right is defined by the laws of Louisiana. And the hypothetical statuses given the trustee or "bona fide purchaser" are also governed by state law. Collier, supra, vol. 4, § 67.25[1] at pp. 347–348; Collier, supra, Vol. 4a, § 70.49 at pp. 602–603, § 70.51[1] at p. 616. See, Munson v. Risinger, 114 So.2d 59 (La.App.1959). See also, Collier, supra, Vol. 4, § 67.20[3.1], p. 229.

### 1. Louisiana's Privilege and Sec. 67(c) (1) (A):

Upon default in payment by the debtor, a vendor, in Louisiana, may sue for collection of the balance of the purchase price remaining unpaid; he may sequester the thing sold (LSA–C.C.P. art. 3571), and judgment will be with recognition of his vendor's privilege, to secure payment of the judgment. The privilege arises automatically upon the contract of sale,[5] and it can be enforced by sequestration, judgment and sale at anytime following default.[6] The privilege is enforceable regardless of whether the debtor is insolvent or his property is being distributed or liquidated, and whether or not the property has been seized by some other creditor seeking execution of a claim against it.[7] Therefore, we con-

---

5. Daggett, *Louisiana Privileges and Chattel Mortgage*, § 37, p. 96 (1942); Perot v. Levasseur, 21 La.Ann. 529 (1869); State ex rel. Landry v. Broussard, 177 So. 403 (La.App.1937).

6. Margolin, "Civil Law: Vendor's Privilege," 4 Tulane Law Rev. 239 (1929–1930).

7. Converse, Kennett & Co. v. Hill & Co. —W. H. Letchford & Co., 14 La.Ann. 89 (1859). See, Peoples Homestead &

Saving Ass'n v. Masling, 185 La. 800, 171 So. 36 (1936); Suttle v. Biles, 130 La. 448, 58 So. 144 (1912); American Hoist & Derrick Co. v. Frey, 127 La. 183, 53 So. 486 (1910); American Furniture Co. v. Grant-Jung Furniture Co., 50 La.Ann. 931, 24 So. 182 (1898); Cypress Shingle & Lumber Co., v. Lorio, 46 La. Ann. 441, 15 So. 95 (1894); Lowden v. Robertson, 40 La.Ann. 825, 5 So. 405 (1888); Alex Kuhn & Co. v. Embry & Pilcher, 35 La.Ann. 488 (1883); Pinard

clude that the requirements of Section 67(c) (1) (A) are met by the vendor's privilege.

### 2. Louisiana's Privilege and Sec. 67(c) (1) (B):

We now apply the "bona fide purchaser" test of Section 67(c) (1) (B). It is the settled law of Louisiana that a vendor may enforce his privilege only so long as the thing sold remains in the possession of the original vendee. LSA–C.C. arts. 3217(7) and 3227. If the original vendee resells the thing to a third party bona fide purchaser who takes possession, then the privilege of the vendor is lost. Wilson v. Lowrie, 156 La. 1062, 101 So. 549 (1924); Burdeau v. His Creditors, 44 La.Ann. 11, 10 So. 395 (1891); United Furniture Stores, Inc. v. Rogers, 14 La.App. 529, 129 So. 377 (1930); Heard v. Noble, 9 La.App. 153, 119 So. 479 (1928); Robinson v. Tatum, 7 La.App. 335 (1927).

Section 67(c) (1) (B) does not require the assumption that a "bona fide purchaser" be in possession of the thing sold which is subject to the vendor's privilege.[8] Possession by the original vendee *is* a requisite for protection of the seller and the enforcement of his vendor's privilege under Louisiana law. And, at the time of filing the petition in bankruptcy by the bankrupt-vendee in this case, this was the reality of the situation between the parties. Under these circumstances the vendor (Beneficial) had the right under Louisiana law to seize or sequester the article sold to the bankrupt even if legal title had passed to a bona fide purchaser, provided there had been no actual delivery of the property to cause the loss of its security. Continental Bank & Trust Co. v. Succession of McCann, 151 La. 555, 92 So. 55 (1922); Flint & Jones v. Rawlings, 20 La.Ann. 557 (1868). See, Wilson v. Lowrie, supra; Alex Kuhn & Co. v. Embry & Pilcher, supra. This result has been explained as follows:

"The Louisiana courts follow the majority French view in consistently holding that a resale of the property by the vendee does not divest the original vendor of his privilege unless there has been actual physical delivery to the second vendee. [The author notes that a vocal minority (including Planiol) of the French commentators argue persuasively that the French Code would not support such a position.] However, the Louisiana Civil Code contains three pertinent articles which are not found in the French Code at all [La.Civ.Co. arts. 1922, 1923 and 2247 (see also, art. 2480)[9]], and it

v. George, Man.Unrep.Cas. 176 (1880); Ginn v. Ginn, 48 So.2d 655 (La.App. 1950); Blitz v. Guenin, 187 So. 690 (La.App.1939); Rains v. Thomason & Champion, 17 La.App. 120, 135 So. 92 (1931); Max Barnett Furniture Co. v. Martel, 3 La.App. 234 (1925); LSA–C.C.P. art. 2341.

8. La.Civ.Code art. 1922:
"With respect to movable effects, although, by the rule referred to in the two last preceding articles, the consent to transfer vests the ownership of the property in the obligee, yet this effect is strictly confined to the parties until actual delivery of the object. If the vendor, being in possession, should, by a second contract, transfer the ownership of the property to another person, who gets the possession before the first obligee, the last transferee is considered as the owner, provided the contract be made on his part *bona fide*, and without notice of the former contract."

La.Civ.Code art. 1923:
"In like manner, if movable property has been alienated by contract, but not delivered, it is liable in the hands of the obligor to seizure and attachment, in behalf of his creditors."

La.Civ.Code art. 2247:
"Sales or exchanges of movable property are void against *bona fide* purchasers and creditors unless possession is given before such *bona fide* purchaser or creditor acquires his right by possession. What a delivery of possession is depends on the nature of the property; it may be constructive or actual; the delivery of the key of a store in which it is contained, or an order accepted by the person in whose custody it is held, if at the order of the vendor, is good evidence of delivery."

9. Section 1(5) defines "bona fide purchaser" to include a "bona fide encumbrancer". If the bankrupt had executed a chattel mortgage on this furniture in

may be that these articles give Louisiana more justification for this position than the French courts and commentators have. \* \* \* Hence, it seems that if these three articles are read together with Article 3227 on the vendor's privilege, the phrase 'if the property still remains in the possession of the purchaser' might reasonably mean in the actual physical possession of the vendee, and the Louisiana courts are, therefore, logical and right in their interpretation of the article. This interpretation would be justified in Louisiana where the similar French interpretation (which is not supported by the above three additional articles) is not justified." Margolin, supra, pp. 249–251.

Even assuming that the bona fide purchaser contemplated in Section 67(c) (1) (B) was in possession of the property, the first proviso of Section 67(c) (1) (B) would require a consideration of Section 70(c). And if the "statutory lien" is not invalid against the trustee "at the date of bankruptcy" under that section, and if it is required by applicable lien law to be perfected in order to be valid against a subsequent bona fide purchaser, it may nevertheless "be valid \* \* \* if perfected within the time permitted by and in accordance with" such law. As is readily seen from the foregoing discussion, the time permitted Beneficial to perfect its lien was any time before the property left the bankrupt's actual possession. The second proviso of Section 67(c) (1) (B) makes filing of notice of its claim to the privilege by Beneficial, the equivalent of a seizure (under sequestration) of the thing subject to the privilege or "statutory lien".

The question then becomes whether or not the vendor's privilege is invalid against the trustee under Section 70(c). An examination of the "applicable lien law" (Louisiana law) requires the conclusion that the privilege is valid against the trustee.

In a distribution of the proceeds from the sale of the thing to which the privilege attaches, a creditor whose claim is secured by a vendor's privilege would come before a judgment creditor, or a creditor with a general lien on all of the bankrupt's property, or a creditor who had obtained an execution returned unsatisfied. Converse, Kennett & Co. v. Hill & Co.—W. H. Letchford & Co., 14 La.Ann. 89 (1859); LSA–C.C. arts. 3183, 3267; LSA–C.C.P. arts. 1092, 2292, 2337, 2374, 2378, 3571; LSA–R.S. 9:2621.

The vendor's privilege, a special privilege on movables, is one of the most important and highest ranking security devices recognized in Louisiana. It has formed a cornerstone for credit in the economic structure of the mercantile trade in this State for centuries. It is not a spurious legal device to permit a debtor in failing circumstances to favor one creditor at the expense of another. Justice requires its recognition:

"As long as the price is not paid the sale augments the patrimony of the buyer at the expense of the vendor; the latter has impoverished himself, he has alienated his property and has not yet received anything in exchange. The vendor has thus gratuitously augmented the common pledge of the creditors of the buyer; the latter can be paid with the property sold without the vendor being paid, they enrich themselves at his expense, which is un-

---

all good faith and for its full value, there is no doubt that under Louisiana law the vendor's privilege would prevail so long as the property remained in the possession of the original vendee. Weiss v. Hudson Construction Co., 151 La. 1, 91 So. 525 (1922); Continental Bank & Trust Co. v. Succ. of McCann, supra. Since the contract of pledge in Louisiana requires delivery of the thing to the

pledgee, the vendor's privilege is lost. Pierson v. Carmouche, 146 La. 798, 84 So. 59 (1920); Fetter v. Field, 1 La. Ann. 80 (1846). But the facts of this case are not complicated by these hypothetical situations. We re-emphasize that when the debtor filed his petition in this case he was in actual possession of the furniture in question.

just. The new property therefore can be veritably acquired by the buyer only by the payment of the price; in French legislation which admits the immediate transfer of the title, the privilege is necessary to prevent an inequity." Planiol, supra, No. 2608, p. 453. Seé, Carlin v. Gordy, 32 La.Ann. 1285 (1880).

■ Since the vendor's privilege meets the requirements of Section 70(c), and because Beneficial can enforce its privilege against a bona fide purchaser if the property is seized in the possession of the original vendee (by the filing of notice), it must be concluded that this privilege, a statutory lien, must be treated as a secured claim in bankruptcy. The case is remanded to the referee for treatment in accordance with this decision.

Counsel for Beneficial will prepare and submit a formal decree in accordance with Rule 9(e) of the Western District of Louisiana.