No. 12,483.

AMERICAN FURNITURE COMPANY VS. GRANT-JUNG FURNITURE
COMPANY, LIMITED.

The writ of sequestration is intended as a protective and preventive, not a compulsory, remedy. Parties using it for coercive purposes to effect payment of claims due them, by threats of injury and annoyance, must be prepared if they do so, to be in the exact position necessary to enable them to claim the benefit of the legal proposition, that a person is not liable for damages if he merely exercises a legal right, even though his motives may be bad.

Where the question before the court is, whether on the face of the papers the District Court was justified on the pleadings and affidavit in directing a writ of sequestration to issue—the appellate court will give full weight to the affidavit and take its averments to be true; but, where the question comes up on a motion to dissolve the sequestration on a direct charge that the allegations of the petition and affidavit were false, plaintiff will be required to do more than rest upon the pleadings and affidavit.] On the trial of the sequestration as to issues of fact, plaintiff must show and sustain the grounds and facts upon which his alleged fear was made to rest.

Where a person engaged in selling goods, wares and merchandise, to parties in a retail business, sells them on credit, there is an implied consent on his part that the latter should dispose of the goods purchased in the usual and regular course of business. If the price be not paid at maturity, the vendor may withdraw this consent and resort to legal proceedings (if called for) to enforce this withdrawal. Should he resort to writs of sequestration for that purpose he must be careful not to convey to the general public in his pleadings and affidavit (unless warranted by the facts) that he had reason to believe that defendants had concealed or were about concealing the goods. That allegation carries with it the idea of dishonesty or want of fairness, and is calculated to alarm all parties dealing with the vendees.

APPEAL from the Civil District Court for the Parish of Orleans.
Théard, J.

*Edwin T. Merrick* and *B. R. Forman* for Plaintiff, Appellant.

*W. S. Parkerson* for Defendant, Appellee.

Argued and submitted January 28, 1898.
Opinion handed down March 21, 1898.
Rehearing refused April 18, 1898.

The opinion of the court was delivered by

NICHOLLS, C. J. On the 29th of December, 1894, plaintiff instituted a suit in the Civil District Court for the parish of Orleans against defendant, asking judgment for nine hundred and forty-three dollars with vendor's privilege on certain property which it alleged it had sold to defendant. With this reference to these sales, plaintiff alleged that it had on the 5th and 20th of July, and 5th of October, 1894, contracted, sold and delivered to the defendant, goods, wares and merchandise consisting of bedroom sets, bookcases desks, sideboards, china cases, etc., as would appear by a statement annexed to its petition. That the sales of certain bookcases, china closets, bedroom sets and sideboards, of goods sold which petitioner could point out, were made in New Orleans through its secretary and gave rise to a vendor's privilege to secure payment of the price. Plaintiff's demand was accompanied by a prayer for a sequestration based upon an allegation that defendant would conceal part with or dispose of the said movables in his position during the pendency of the suit. A writ of sequestration having issued under order of court granted on plaintiff's petition, the sheriff, on the 29th of January, 1895, sequestered and took into his possesion a small lot of furniture. Defendant bonded the property sequestered on the 31st of January, 1895.

On that day defendant ruled plaintiff to show case why the sequestration should not be set aside on the grounds:

1. That the allegation contained in plaintiff's petition, that it feared that defendant would conceal, part with or dispose of the

movable property in its possession during the pendency of the suit, was false and untrue.

2. That the allegation that the sale of certain bookcases, china closets, bedroom sets and sideboards was made through an agent in New Orleans was false and untrue; said goods having been sold in the city of Cincinnati, in the State of Ohio.

On the trial of this rule the sequestration was dissolved. Plaintiff appealed from the decision to the Court of Appeals, which court affirmed the judgment of the District Court.

On the 9th of January, 1895, defendant filed an answer pleading first a general denial. Further answering, it averred that at the institution of the suit the goods had not been delivered or completed; that the defendant did not intend to conceal or part with the goods, as was well known to plaintiff, to whom the goods were tendered by defendants; that the plaintiff did not have a vendor's privilege on the goods, the same having been sold in the State of Ohio.

Assuming the position of plaintiffs in reconvention, defendants alleged that the American Furnishing Company, in accordance with the requirements of law, had, in taking out the sequestration, furnished bond in the sum of one thousand dollars, upon which E. T. Merrick, Jr., became the surety, and he was liable *in solido* with that company up to the amount of said bond.

That by reason of said wrongful, illegal and malicious sequestration, plaintiffs in reconvention were compelled to employ an attorney for the purpose of dissolving the same, and that for such services they owe their attorney the sum of two hundred and fifty dollars; that they were injured in their credit and business, many of their creditors sending their claims to attorneys for collection and demanding an immediate settlement; that they were greatly harassed and embarrassed thereby and had been injured in the sum of ten thousand dollars; that Peter Jung, vice president of the Grant-Jung Company, was compelled to go North to see their creditors as a result of said illegal, wrongful and malicious sequestration, and that the said trip forced upon them an expenditure of some three hundred dollars.

In view of the premises, defendant prayed that the sequestration be dissolved and plaintiff's suit dismissed, and that there be judgment in reconvention in their own favor for the sum of ten thousand five hundred and fifty dollars and costs.

The District Court rendered judmgent on the main demand against defendant, in favor of plaintiff, for the sum of nine hundred and forty-three dollars, with legal interest from judicial demand and costs thereof, and on the reconventional demand against plaintiffs, in favor of defendants for fifteen hundred and fifty dollars and costs of said demand.

Plaintiffs appealed. Defendants moved to amend, praying that the judgment appealed from be increased so as to grant them damages for the full amount asked in their reconventional demand. After this amendment was asked for the Grant-Jung Company was dissolved and went into liquidation under liquidators, who, on motion, were made parties to the appeal.

Counsel of the Grant-Jung Company contend in their brief and argument and the members of that company declare in their testimony, that the sequestration taken out by plaintiff was utterly unjustified; that the articles sequestered were not sold in New Orleans, and the price thereof was not secured by privilege; that they formed part of orders given for goods which were not completed and the articles in hand were not in a condition to be resold by them; that until the orders were fully filled, the price of the articles were not due and exigible and the sequestration prematurely issued; that it was not only issued illegally, but maliciously. That plaintiff's secretary, Hildebrand, who represented them in New Orleans in the matter of the sequestration, stated before it was issued that unless plaintiff's bill was paid he would cause it to be issued; that it would bring about " big trouble," and threatened them with the injury and annoyance it would cause them. That the immediate effect of the sequestration was to produce great alarm in the minds of the parties from whom defendants were in the habit of purchasing goods, as well as those who had been in the habit of purchasing from them. That the former, in a number of instances, refused or neglected to honor orders which had been sent them and stopped extra-judicially goods which had already been forwarded to them; that various commercial credit agencies withdrew their credit from their reports; that after the sequestration they were unable to purchase goods, except for cash or on shipments with bills of lading attached, or on personal guarantee of payment by Mr. Jung. That several suits were filed against the company immediately after the sequestration which would not have been filed but for it; that their

creditors generally were about to follow suit and would have done so but for Mr. Jung having been sent North and East to explain to them the exact situation having induced them to forego action; that the credit of the company was good at the time of the sequestration and it was making money, though not much; that its stock was greatly reduced below its necessities in the interval between the sequestration and the July following; that during that period it lost about eleven thousand dollars, which loss it attributed to the sequestration. That numbers of persons who were in the habit of making purchases on advance deposits of one-fourth to one-tenth of the orders, withdrew the deposits they had made, also their orders. That shortly before the sequestration defendants paid plaintiffs every dollar which was then due them and offered to return the articles which they then had on hand which they had purchased from them; that plaintiffs after accepting the offer refused to carry it out and brought suit; that defendants had done nothing to warrant their allegation, " that they had reason to fear that defendants would part with, dispose of or conceal the property sequestered during the pendency of the suit."

Plaintiffs on the other hand insist that the articles sequestered, were sold in New Orleans, and payment of the price of the same was secured by privilege; that the price was due and exigible; that defendants gave many evasive and unfounded reasons and excuses for delaying payment, and after having themselves offered to return to plaintiffs the articles in their stock, which they then had, and which remained unpaid for, declined to carry out their offer when called upon to do so, imposing upon plaintiffs as a condition for doing so the payment of a bill for freight, insurance, drayage, storage, etc., upon the goods not mentioned when they made the offer which bill was almost equal to the value of the goods to be returned and entirely unwarranted in being asked for as to amount or as to fact. Hildebrand substantially denies threatening the defendant with a sequestration. He declared that he simply referred to the consequences of a sequestration as likely to give them trouble and annoyance and declared that if he was forced to take action for the prosecution of plaintiffs' legal rights he could not help the consequences. He said that defendant after having broken off their arrangement to plaintiffs to return the articles in stock which they had purchased from plaintiff told him—that he might crack his whip

—that they had employed an attorney and could keep them out of their money for eight or nine months.

For the purposes of discussion of the rights and obligation of parties we have to accept two facts as having been conclusively established by the judgments of the District Court and the Court of Appeals: first, that the sequestration was illegally taken out; and second, that defendant was justly and truly indebted to plaintiff at the time of the judgment to the amount declared upon in their petition.

While we have to accept this first point as established, we are not advised as to the precise ground upon which the result was reached. There is evidence in the record to which the court may have given full credit to the effect that the articles in stock which were sequestered were none of them in the condition which defendant had the right to exact they should be in before being called on to make payment for the same, nor in the condition to be resold. There is conflict in the evidence as to whether all or any of the articles sequestered were purchased under a Louisiana contract. There is no evidence in the record that the defendants had concealed or were about to conceal any of the articles purchased from the plaintiffs and none that defendants were at the time of the sequestration in an embarrassed or insolvent condition.

The dissolution of the sequestration by the District Court and Court of Appeal carries with it as an unavoidable consequence a liability on the part of the plaintiffs to damages to some extent; the extent of the damages being dependent upon the facts surrounding and connected with its issuance. If the sequestration was dissolved simply bp reason of some error or mere slip of the proceedings or the pleadings, the plaintiffs would be liable for compensatory damages only; that is, to the damages resulting from it as its natural and proximate cause, but if it was issued maliciously with the motive and intention of injuring the defendants, they would be liable as for a tort just as any other person would be liable for torts resulting from acts unconnected with judicial proceedings. The writ of sequestration is intended by law to be a protective and preventive, not a compulsory remedy—parties using it for coercive purposes to effect payment of claims due them by threats of injury and annoyance must be prepared if they do so to be in the exact position to claim the benefit of the legal proposition that a person is not liable for damages if he merely exercises a legal right, even though his motives may be bad.

We are not prepared to say that a part of the articles sequestered were not purchased in Louisiana at some date later than August, 1894. It is exceedingly difficult to fix the the identity of articles of furniture sold and delivered under different orders and we can not trace some of the articles to any order given in August, or prior thereto, but neither are we prepared to say that any portion of the articles sequestered were complete or in salable condition.

A large part of the arguments and briefs of counsel of both sides was taken up in discussing whether certain china closets sequestesed were sold in Louisiana or in Cincinnati. A very close analysis of the testimony disclosed that the apparently irreconcilable statements of the witnesses of the plaintiffs on the one side and those of the defendant on the other sprang from a difference of opinion as to whether a certain conversation between J. G. Grant and Hildebrand evidenced a sale or not. It appears that the plaintiff company not only sells, but it manufactures articles of furniture. Grant testified that among the articles which his company was in the habid of purchasing from plaintiffs were bookcases of a particular pattern, known as " No. 27 bookcases." That in January, 1894, he suggested in New Orleans to Hildebrand that by a certain alteration in the pattern a very salable and popular china closet might be made, several of their customers having so expressed themselves; that Hildebrand asked him about how many persons had done so, and he replied about a dozen; that Hildebrand thought the idea a good one, and Hildebrand said his company could meet the demand; that he would communicate with his company. Up to this point both parties agree as to the conversation, but beyond that, they separate. Hildebrand says that he, at that time, fixed the prices for these new china closets, and Grant then and there purchased a dozen and ordered them forwarded. Grant says that Hildebrand did not know what the alteration would cost and was not in a position to fix prices, nor to come under any obligation to make such china closets or make sales. That he (Grant) merely made a suggestion to Hildebrand and Hildebrand merely communicated it as such to his company; that true it was that the latter adopted it and manufactured them, but that the defendant company never came under any obligation to buy until August of 1894, when he and Hildebrand met in Cincinnati, when an order was, for the first time, given for them.

Plaintiffs produced and filed a letter written to them by defendant

dated New Orleans, 3-21-1894, in which, after referring to othe matters, they say: "Do not ship the china closets you made for us until we give you further notice, as we hope soon to move into larger quarters and do not want to put any more in our warehouse."

Defendants say this letter referred to china closets other than those of this particular pattern, as their order of January, 1894 would show that the parties had dealings with reference to other kinds, but there is no evidence before us that any closets other than these particular ones were ever "made to order." We are inclined to think that there must have been some understanding between these parties in respect to them of a more definite character than defendants believe.

There may be a difference between the rights and obligations of parties as resulting from a contract of *absolute sale* and those resulting from a *contract to "manufacture"* or an order " to *manufacture*" under a promise of purchase, but we need not go into any discussion of the question inasmuch as the testimony shows that these particular articles were not in a complete condition when sequestered and not in a condition for resale, and plaintiffs were not in position to demand the price thereof.

Each party claims that the burden of proof was upon the other in respect to damages and the extent of the same. Plaintiffs contend that the affidavit taken by them verifying the allegations of their petition must be taken for true and protects them against damages, and particularly punitive damages, until rebutted. They assert that they had sworn that " they had reason to fear that defendant would part with, dispose of or conceal the goods;" that this was all that the law exacted on their part, and having complied with it they could rest secure from any charge of malice so long as defendants failed to prove the non-existence of their fear and of their good faith.

If the question before the court was simply whether, on the face of the papers, the District Court was justified on the pleadings and affidavit in directing the writ of sequestration to issue, if the regularity of the proceedings were simply at issue we would give full weight to the affidavit, but where the question comes up on a motion to dissolve the sequestration on a direct charge that the allegations of the petition and affidavit were false, we think plaintiff would be required to do more than rest upon his pleadings and affidavit. The law contemplated that on the trial of the sequestration as to issues of fact that the plaintiff should be able to show the grounds and

facts upon which his alleged fear was made to rest. The only facts disclosed in this record are the fact itself of indebtedness (which is controverted as to its being exigible though due)—its non-payment and the refusal of defendants after they had proposed to return to plaintiffs the articles which they had purchased from them and which they then held in stock to make the delivery, unless coupled with new and unreasonable demands. We find no evidence of concealment or attempted concealment of those goods on the part of defendant and no evidence of insolvency or embarrassment on their part. The conduct of the defendants in refusing to carry out their agreement with plaintiffs unless they complied with new and unreasonable conditions attached was certainly calculated to irritate them and to do away with any indulgence which they might have otherwise intended to extend to defendants, but it did not do away with the necessity when they did act of keeping within precise legal limits.

When a company engaged in such business as the plaintiffs are in, sells goods on credit to parties engaged in business, such as the defendants are in, it must be necessarily in the contemplation of both parties that the goods sold should be "disposed of and parted with." The consent of the seller to such disposition is necessarily implied. The lessor, under our law, has not only a right of privilege, but of pledge for the payment of the price of the lease, but Marcadé, under Art. 2102, referring to the fruits of the farm, says that they can unquestionably be sold by the lessor, notwithstanding the express terms of the law, for the reason that from the very nature of the subject-matter, the lessor had given an implied anticipated consent to the sale. The mere fact of selling or disposing of the goods by the defendants showed no bad faith on their part; that fact had to be one of other facts to make the selling a just cause for sequestration. It is true that if the price of a sale becomes exigible, and it be not paid according to promise, the vendor may have the right to withdraw this anticipated consent and insist that thereafter the objects upon which his privilege rests may be placed in a position such as that they be not sold and the privilege upon them lost. This right may be independent of any bad faith on the part of the vendee, and when a vendor avails himself of his right so to do, he should be careful not to convey to the general public by his pleadings or affidavit that he had reason to believe that the vendee was about "concealing" the articles sold. That particular declara-

tion conveys and carries with it the idea of dishonesty or want of fairness, and if made by responsible parties would be calculated to alarm all parties dealing with the vendee. If not true it should be left out of the affidavit; it is. not harmless but very injurious surplusage.

We do not think plaintiffs were justified in making this charge against the defendants, particularly when there was nothing to indicate that defendants were in failing circumstances.

The District Court rendered a judgment for fifteen hundred and fifty dollars, without any attempt to show on what particular items of damage it was grounded. The testimony of Grant, Jung and Metaye (the secretary of the defendant company) undoubtedly show just and probable elements for damages, but their statements are of the most general character and they do not descend to particulars. Why the court fixed upon that particular sum we do not know. While we do not feel warranted in setting aside the judgment, we certainly would not be warranted in increasing the amount of damages as appellant suggests.

The judgment is affirmed.