## RENE IMPLEMENT CO., Inc., v. PERRIN.

### No. 1776.

Court of Appeal of Louisiana. First Circuit.

Jan. 11, 1938.

Upon proper allegations made in its petition and the required affidavit and bond, plaintiff obtained from the clerk of court of Iberia parish, in which the property was situated, an order under which the same was sequestered. The writ was issued to pay and satisfy the sum of $730.

Upon being served with the regular notice of seizure, the defendant appeared in court and moved to dissolve the writ on four separate and distinct grounds: (1) That the allegations made to obtain the same were false and untrue; (2) that plaintiff had failed to make the affidavit required by law in order to obtain the same; (3) that the writ had been resorted to in order to harass him and force him into paying a debt claimed by plaintiff which could not be enforced through this process; and (4) that the sequestration bond furnished by plaintiff had not been signed by the proper officer of the corporation. Defendant also asked to recover damages against the plaintiff for the illegal use made of the writ.

The defendant failed to bond the sequestered property and, after the delays for his doing so had expired, the same was bonded by the plaintiff and it went into its possession, or, rather, the possession of one of its officers.

The first ground urged in defendant's motion to dissolve, that is, that the allegations made for obtaining the writ were false and untrue, put at issue the ownership of the seized property, and, on trial in the district court, there was judgment in favor of the defendant and against the plaintiff sustaining the motion to dissolve, recalling the writ, and awarding damages in favor of defendant in the sum of $50 for attorney's fees. All other claims for damages consisting of those for deprivation of the use of his property, loss of time, mortification and humiliation, were rejected for lack of sufficient proof. The district judge handed down written reasons for judgment in which he stated that, having decided the motion on the first ground, namely, the one which involved the issue of ownership of the property, it was unnecessary for him to consider the other questions and issues presented.

James L. Helm and C. Arthur Provost, both of New Iberia, for appellant.

S. O. Landry, of New Iberia, for appellee.

LE BLANC, Judge.

Plaintiff instituted this suit claiming the ownership of a secondhand tractor, a power disc tiller, and a big box sower, all implements used in the planting and cultivation of a rice crop, and all three units being, at the time of the filing of the suit, in the possession of the defendant, Theodore Perrin.

From the judgment as thus rendered, plaintiff has appealed, and defendant has answered the appeal, asking that the amount of damages allowed for attorney's fees be increased to the sum of $75 as originally demanded, and that in addition

thereto he be awarded all other damages prayed for.

 As did the district judge, we believe that the issue raised under defendant's plea of falsity of plaintiff's allegations for obtaining the writ is by far the most serious and important in the case. It puts squarely before the court the question of ownership vel non by the plaintiff of the property sequestered. This is not a disputed proposition. As it presents principally a question to be determined from the facts and surrounding circumstances having to do with a certain transaction between the parties by which it was intended that the property was to be conveyed to the plaintiff by the defendant, and also involves the credibility of these parties and their witnesses, naturally much weight is to be given to the findings of the district judge on these questions. Counsel for appellant bitterly assail the testimony of the defendant Perrin and charge him with pure fabrication of facts and a motive inspired by an intention which was anything but honorable. They contend that the district judge could not but see his testimony in that light, but that he evaded it in resting his judgment entirely upon the construction which he placed on the written instrument on which their client relied to prove its ownership of the property. As the ultimate decision of the district judge regarding the effects of that instrument necessarily had to be made from the facts and circumstances testified to surrounding its confection, and as necessarily also, in order to reach the conclusion he did, he had to accept the defendant's version of those facts, as indeed he says he did, it is difficult for us to understand how it can be urged that he evaded any part of any witness' testimony. True, defendant's testimony must be considered in the light that he is a party in interest in the proceeding, but we find also that all of plaintiff's witnesses on the vital questions involved were either officers or employees of the plaintiff corporation, and to that extent they also may be said to have some interest in the matter. Moreover, on the two important and, we might say, controlling features of the written instrument, that is, those regarding consideration and delivery, we find that the recitals of the instrument itself as originally presented to the defendant and signed by him are in direct contradiction with the testimony of plaintiff's principal witness, the man who prepared it and had defendant to execute it.

Let us now consider the facts presented. On November 28, 1935, the defendant Perrin purchased from the plaintiff the secondhand tractor involved herein for the price and sum of $600. There was a balance on the purchase price amounting to $300, for which he gave his note secured by chattel mortgage maturing November 1, 1936. He also purchased the disc tiller from plaintiff, and on that implement he owed $168, for which he also gave two notes secured by chattel mortgage, one for $84 dated February 15, 1936, maturing November 1, 1936, and the other for a like amount and of same date. maturing November 1, 1937. The act of mortgage contained the usual maturity acceleration clause with regard to the second note in the event the first was not paid at maturity. The big box sower was also bought from plaintiff, but on open account, for the sum of $70.75.

The defendant, a rice farmer, operated as a tenant on the property of C. J. Montgomery in Vermillion parish, who, incidentally, was vice-president of the plaintiff corporation. In November, 1936, he was indebted unto his landlord for quite a substantial sum, and in addition thereto he owed plaintiff the three notes just described with interest and an open account amounting to the sum of $430, including the $70.75, purchase price of the big box sower.

As it was evident that defendant could not meet his obligations, Montgomery and another of the plaintiff's officers, in an effort to have some adjustment made, presented the defendant with a document in printed form, styled "Bill of Sale," with a good many blank spaces unfilled, for his signature. The document of course purported to be a sale of the implements which were fully described therein to the plaintiff, and is the instrument on which it relies and claims to have derived its title to the property. This took place at Madison Le Blanc's Club, referred to as the Bridge Club, and there were present at the time, besides the defendant and Montgomery, Rene Marceaux, secretary and treasurer and manager of the plaintiff corporation, Wallace Vincent, employed as a collector by plaintiff, and Le Blanc, proprietor of the establishment.

The document presented to defendant, as we have stated, was in printed form. It

contained the usual declarations of an act of sale and a description of the implements and stipulated that delivery thereof was to be made immediately to Rene Implement Company, Inc., at Kaplan, La. The consideration was expressed as being the sum of $1. However, the instrument contained this further provision: "The property hereby conveyed is to become the absolute and unconditioned property of Rene Implement Co. Inc., and in further consideration of said sale and delivery, party of the second part (plaintiff herein) agrees to credit on the indebtedness of said first party to said second party the sum of ——— Dollars ($ ), less the amount of any necessary expenses which party of the second part shall be required to pay to obtain delivery of said property at the place above designated, and the said credit shall be entered by the party of the second part upon one or more of the notes which party of the first part owes to party of the second part and which party of the first part admits are unpaid at this date, as follows: [There are then several blank spaces for the description of notes, but all these spaces are left unfilled]."

These blank spaces are then followed by another clause which refers to the application of the credit to the note or notes, the whole document being replete with the use of the words "note" and "notes."

In that form, the document was presented to the defendant and signed by him. Within a few minutes after he had signed it, on further discussion regarding an extension of time, Marceaux inserted in his own handwriting, in the unsigned copy of the instrument, in the blank space provided for the description of the notes, the following clause: "This contract is sign by Theodore Perrin under condition that he has until Dec. 1st, 1936 to pay for same—or release said implement." This clause is immediately signed by Marceaux in his capacity as secretary and treasurer. The copy with this newly inserted clause was the one that was given the defendant.

Some time after all of this had taken place, plaintiff's manager, who held the copy of the document which had been signed by Perrin, outside of the presence of the defendant and without his knowledge and consent, inserted in one of the unfilled blank spaces provided for stipulating the amount of credit which was to be given for the transfer of the property, the words and figures: "Seven hundred thirty & No/100

Dollars, ($730.00)," and in the blank spaces provided for the description of the notes, the following:

| $300.00 | 11/28/35 | 11/1/36 | 8% |
| 84.00 | 2/14/36 | 11/1/36 | 7% |

Amount due on open account for repairs- $346.00

On December 1, 1936, at the expiration of the period of extension as inserted in the document held by defendant, at his request, the date December 1, 1936, was changed to December 4, 1936, and, although the document was in exactly the same form in which it had at first been left by plaintiff's manager with the defendant, nothing was said or done about inserting the words and figures which had been additionally inserted in the signed copy in possession of the plaintiff.

Before the expiration of this new extension, defendant tendered plaintiff, at its office, a certified check for $414, and, in addition, he says, enough cash to make the total sum of $510 to take up what he claims was the full amount of the notes which he owed, but his tender was refused, as plaintiff contended that under the agreement he had bound himself to pay additionally the amount of the open account. This defendant refused to accede to, and plaintiff then resorted to the present proceeding.

It is patent from the contents and provisions of the two copies of the documents presented to the court that there is a difference between them which only could be reconciled by testimony concerning the real and true agreement between the parties. Unfortunately, the testimony of the principals engaged in that agreement only serves to accentuate the conflict which exists. Defendant insists that the only indebtedness contemplated by the agreement was that represented by the notes he owed the plaintiff, and plaintiff's officers on the other hand are equally insistent that, in addition to the notes, defendant was to liquidate the amount due by him on the open account.

It seems strange in the first place that the document and the carbon copy which apparently had been prepared by plaintiff's officers, to the extent in which it was presented to Perrin, should not have contained the amount of the indebtedness which they contend was intended to be credited and that it should have been left in the form that it was with the so frequent use of the words "note" or "notes." No explanation is given for this omission save

the one offered by Mr. Montgomery that he did not think it was necessary as Mr. Perrin had his bill from the implement company When pressed a bit further, he says: "Mr. Perrin was a tenant on my property and I didn't think it was necessary to do all that. I have never had any trouble before with tenants." Mr. Marceaux is not any more explicit in this regard, stating that Perrin had his statement before hand and knew what the amount was. He later says, however, that he added the figures in the copy he held, several days after, "as a matter of form to show him how much it was in case he did not have his statement." Testimony like this is not of such character as to strongly impress the court. It is not any better in the way of proving the real consideration for the purported sale of these implements than is that of the defendant whose version is to some extent corroborated by the contents of the copy of the document held by him which referred to the indebtedness he was to liquidate as being exclusively made up of the notes which he owed.

Counsel for plaintiff state, however, that the testimony on this point is corroborated by two other witnesses present at the time the document was signed. They refer to the witnesses Wallace Vincent, employee of the plaintiff corporation, and Madison Le Blanc at whose place it was signed. Vincent, on being asked: "What amounts were discussed as being due by Mr. Perrin at the time?" answers: "They did not discuss the amount at Madison LeBlanc's, but I do know that he owed $758.00 or something on the books." Of course, his knowledge of what defendant owed on plaintiff's books is foreign and irrelevant to the question of consideration which was under discussion. Madison Le Blanc makes no pretense at saying what the consideration was to be. On the contrary, he specifically says that he did not know how much it was. He testifies that he heard Marceaux tell Perrin after the document had been signed: "You see that is signed and agreed and I will give you until the 1st. to find the money and come and settle up with me, and he says 'Pay me and I will give you back everything'." And continuing the witness says: "So I don't know how much; I did not even read the paper; I did not ask him to read the paper and that is what I know of it." Certainly there is nothing in the testimony of either of these two witnesses which can be said to corroborate the testimony of plaintiff's other witnesses to the effect that there was a definite consideration agreed upon which included the amount of the open account in addition to that of the defendant's notes which it held.

Coming now to the question of delivery of the movable property purported to have been sold under the agreement, we find it as futile to attempt to reconcile the testimony on that point as on the one of consideration. Plaintiff has adduced some proof to the effect that delivery of the implements was made by the defendant when he consented that they should remain on Mr. Montgomery's property under lock, the key to the gate to be held by Montgomery's manager. Aside from the serious doubt as to this being the kind of delivery required to complete a sale or transfer of movable property, it is apparent that this testimony is in direct conflict with the terms of the written document regarding delivery. By reference to its provisions we see that delivery was to be made immediately to Rene Implement Company, Inc., at Kaplan, La. This provision was inserted in the blank spaces in both copies of the document, so there can be but little doubt on this point. Had the parties intended a different form of delivery, it would have been very simple to have so provided in the written contract. The defendant testifies that delivery as provided for in the document was the only one contemplated, and that his request to Mr. Montgomery was to leave the implements on his property until such time as he would have paid his obligations to the plaintiff under the extension clause in the contract. As a matter of fact, it is admitted that he left not only the implements involved in this proceeding on Montgomery's property but several others as well, and at the time of the trial in the lower court some of them were still there.

In view of the alterations in the two copies of the document offered in evidence, their apparent differences, and the irreconcilable conflict in the testimony concerning their execution, it can hardly be said there was such a meeting of the minds of the parties as to hold that the same constituted a valid and binding contract between them. In fact, it is difficult to classify the form of agreement which was intended. It was not an outright sale of the property described, as the language of what we have referred to as the extension clause inserted in the copy delivered to the defendant will show. Viewed as a sale or as a dation en paiement

for which it may have been also intended, it is deficient in the two essential particulars of consideration which, under our Civil Code must be certain, and of delivery of the property which was to be transferred or surrendered. Civil Code, arts. 2464 and 2656. Moreover, as far as the record shows, plaintiff still holds the defendant's notes and still carries the open account on its books. It has never tendered the notes nor has it offered to close the account. Certainly under its theory of a sale of the property and its ownership it cannot continue to hold the defendant's notes and carry the account on its books. In other words, it cannot have the property, the notes and the open account, too, all of which leads us to the same conclusion reached by the district judge that plaintiff has made illegal use of the writ of sequestration, and this takes us now to the question of damages.

Plaintiff's counsel contend that damages are not recoverable for the reason that the ground on which the motion to dissolve the sequestration was decided was the one which put the case at issue on the merits and that the jurisprudence is to the effect that, whenever any conservatory writ is dissolved as a result of a trial on the merits, damages for its dissolution will not be allowed.

There is authority for the proposition that a motion to dissolve a conservatory writ on the ground of falsity of the affidavit on which it was obtained will be taken as an answer to the merits of the case, and numerous decisions holding that, on dissolution of the writ as a result of trial on the merits, damages, even for attorney's fees, are not recoverable. Some of the latest of these are Byrd v. Cooper, 166 La. 402, 117 So. 441; Fariss v. Swift, 156 La. 12, 99 So. 893; Socola Rice Mill Co., Inc., v. Gitz, 165 La. 984, 116 So. 407. In some other cases, however, the court has held that under certain circumstances which are said to be exceptional damages are recoverable for dissolving writs even after trial on the merits. American Hoist Co. v. Frey, 127 La. 183, 184, 53 So. 486; American Furniture Co. v. Grant-Jung Furniture Co., 50 La.Ann. 931, 24 So. 182. The latest case in which so called exceptional circumstances were recognized is that of Louisiana State Rice Milling Co., Inc., v. Potter, 179 La. 197, 153 So. 690, 691. There, as in this case, the decision of the motion to dissolve was in effect a decision of the merits of the case. Instead of having pleaded the falsity

of the affidavit on which the writ had been obtained, the defendant, in his motion to dissolve, had simply denied the allegations of the petition, and counsel for plaintiff then sought to have the rule to dissolve stand as an answer to the merits. The court declined the request, the matter went to trial as on a motion to dissolve, and damages in the way of attorney's fees were allowed. The judgment was affirmed on appeal, the Supreme Court holding that the whole proceeding had been summary and not one on the merits. "It is true," said the court, "that the alleged sale and right of possession were denied and that the untruthfulness of these allegations was established on the trial of the rule, but the proof of these facts was essential to the successful prosecution of the rule." See, also, General Finance Co. of Louisiana v. Veith, La.App., 177 So. 71. In the present case, although by his rule to dissolve the defendant may be said to have put the merits of the case at issue, there was no motion, request, or suggestion that the same be taken as an answer, and the matter was proceeded with as on rule, and in a summary manner. If anything, therefore, the circumstances make the case a bit stronger in favor of an award for damages than the last two cited, and we hold that defendant is entitled to damages if he has made proper proof.

The damages, he claims, as stated heretofore, are for attorney's fees, for loss of time, for injury to his reputation, and $12 per day from the date of the sequestration for having been deprived of the use of his property which was unjustly seized. The lower court, as we have stated, allowed the sum of $50 for attorney's fees and rejected all other claims.

We think that the damages claimed for loss of time and for injury to reputation were properly denied for lack of sufficient proof. Defendant stated that he had made arrangements to cultivate a tract of 80 acres as a tenant, but his arrangements seemed to have been limited to securing the land. He says nothing about having obtained the necessary seed and other advances incidental to making a rice crop. Even as to the land, he is a bit indefinite. His implements may have had a rental value, but he has submitted no actual proof in that regard. He simply places it at $12 a day from the time of the seizure, which of course is grossly excessive. In the absence of any more specific proof the court is unable to fix a value.

Nor do we think that plaintiff has proved damages to his reputation with any greater certainty, and we believe that this item was also properly rejected in the lower court.

With regard to the claim for attorney's fees, we find that the same has been proven in the sum prayed for by defendant which is $25 more than was allowed in the judgment appealed from. From our study of the record and our observation of the legal work involved, we think that the increase as prayed for in defendant's answer to the appeal is fully warranted.

For the foregoing reasons, it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, amended by increasing the award for attorney's fees from the sum of $50 to the sum of $75, and that, as thus amended, it be affirmed.