## GENERAL FINANCE CO. OF LOUISIANA, Inc., v. VEITH, Jr. *

### No. 16692.

Court of Appeal of Louisiana. Orleans.

Nov. 15, 1937.

*Rehearing denied Nov. 29, 1937.

Stephen C. Hartel and Jonas C. Sporl, both of New Orleans, for appellant.

Prowell & McBride, of New Orleans, for appellee.

McCALEB, Judge.

This is a controversy involving the title to a certain Buick automobile. On December 4, 1936, the plaintiff finance company, alleging that it is the owner of the car and that the defendant was in possession of it, applied for and obtained a writ of sequestration directing the constable of the First city court to seize and hold it until further orders of court. In obedience to the writ, the constable seized the automobile from the defendant, who later bonded the seizure.

The defendant claims that the writ of sequestration was improvidently issued forasmuch as he is the lawful owner of the automobile, having purchased the same on September 25, 1936, from the plaintiff's duly authorized agent, one Emile J. Parmentel, for the sum of $225.

On this issue, a trial was had which resulted in a judgment for the plaintiff. Defendant has appealed from the adverse decision.

We find the facts of the case to be as follows:

The Buick automobile was formerly owned by one Schwicki. The plaintiff finance company held a chattel mortgage on the car, securing the payment of a loan made to Schwicki in the sum of $282.50. The latter defaulted in the payment of his obligation to the plaintiff and in March, 1936, plaintiff repossessed the automobile under the mortgage. Upon acquisition of the ownership of the car, plaintiff delivered it to one Parmentel to be sold by him for plaintiff's account.

Parmentel operated a used car lot where secondhand automobiles were exchanged and sold. The plaintiff, by reason of its business, had occasion to repossess automobiles from time to time, and these cars were turned over by it to Parmentel and other used car dealers to be sold for its account. Mr. Villegas, general manager of the plaintiff company, testified that all automobiles delivered to Parmentel, for sale, were to be disposed of by him only in case the plaintiff approved the transaction; that these cars were stored upon Parmentel's lot without expense to plaintiff; and that Parmentel was entitled to a commission of 15 per cent. of the price paid by the purchaser on all sales made by him.

The defendant's story is that, sometime after the Buick had been stored at Parmentel's place of business for the purpose of sale, he became interested in purchasing it and that he accordingly made a proposal to buy the car for $225 to be paid as follows: $75 to be allowed him in trade on an old Buick car owned by him, $50 in cash, and the balance of $100 in monthly installments of $25.00 each. This offer was made in writing to Parmentel, and he in turn submitted it to the plaintiff. The defendant says that Parmental informed him that plaintiff refused the offer made by him because plaintiff considered defendant to be a poor credit risk. On the other hand,

plaintiff's witness, Mr. Villegas, stated that the offer was rejected by plaintiff for the reasons that defendant's credit did not warrant the granting of a loan to him (he having previously defaulted in the payment of a debt owed to plaintiff); that the price submitted by defendant was inadequate because plaintiff wanted $335 for the car; and that it was not plaintiff's policy to accept other cars in trade on the sale of repossessed automobiles.

The defendant further relates that, after the plaintiff rejected the first offer, he again proposed to purchase the automobile for $225 to be paid as follows: An allowance of $75 on his old Buick to be given in trade, $75 in cash and the balance ($75) payable within ten days. This second offer was submitted by defendant to Parmentel and was accepted by the latter. Accordingly, defendant delivered possession of his old car to Parmentel in trade and issued three checks in payment of the balance of the purchase price. Two of these checks were dated September 30, 1936—one for $25.00 and one for $50—and the other (for $75) was dated October 10, 1936. These checks were drawn on the Whitney National Bank by Plumbing Service & Sup. Co., Inc., signed by defendant and payable to the order of Parmentel. The two checks for $25 and $50, respectively, were indorsed by Parmentel and cashed at the bank. The last check, for $75, was indorsed by Parmentel and deposited to the account of the plaintiff.

Plaintiff denies that it ever received either the car traded in by the defendant or the proceeds of any of the checks given by defendant to Parmentel. Parmentel was not called as a witness by the plaintiff to corroborate the evidence of its general manager, Mr. Villegas, and it has failed to show that Parmentel was unavailable or that he was hostile to its contentions. Strange to say, plaintiff saw fit to successfully avoid, by objections sustained by the trial court, the introduction of any testimony respecting misappropriation of its money by Parmentel. In view of the fact that Parmentel has not been produced to corroborate the theory of plaintiff's case, we would be justified, with the record in its present state, in applying the rule that the failure to produce him constituted an admission that if he had testified, his evidence would have been unfavorable to plaintiff's case. But we will not invoke that presumption here, because it is

patent to us that Parmentel has either absconded or would have been an unwilling witness.

It will be observed, from the foregoing recital of the facts of the case, that we are called upon to decide (1) whether Parmentel was the agent for the plaintiff, and (2) if so, did the defendant have knowledge of the fact that his authority to bind plaintiff was limited?

██ We find no difficulty in holding that Parmentel was plaintiff's agent, for it plainly appears that the automobile was placed in his possession for the purpose of sale. But counsel for plaintiff maintain that, inasmuch as it is shown by the uncontroverted statement of Mr. Villegas that Parmentel had only limited authority to sell, and whereas Parmentel acted beyond the scope of his authority, the defendant has not obtained a legal title to the automobile. This postulation is without merit. It is the universal rule of agency "that where the relation of agency legally exists, the principal will be liable to third persons for all acts committed by the agent in his behalf in the course and within the actual or *apparent* scope of his authority, and this is not altered by the fact that the agent also may be liable, nor by the fact that some of the acts are to the principal's advantage while others are to his disadvantage." (Italics ours.) See Corpus Juris Secundum, Vol. 3 Agency, § 231.

It is obvious to us that the plaintiff, in placing its automobile with Parmentel for sale, clothed the latter with the apparent authority to bind it, and if the defendant was not apprised of the fact that the mandate was of a limited nature, plaintiff is estopped from asserting that the agent did not actually have such power. To rule otherwise would be to permit a principal, who has invested his agent with authority to transact business for him, to escape responsibility by showing that, as a matter of fact, no such authority existed. There are numerous instances in which an innocent principal has been compelled to suffer because of the acts of his unfaithful agent. And it is well established that, if the contest arises between the principal and a third person (both having been defrauded by the agent), the dictates of justice require that the loss must be borne by the principal, for, by investing the agent with apparent authority, it is he who attributed

most to the fraud. See Young v. Gretna Trust & Savings Bank, 184 La. 872, 168 So. 85, and cases there cited.

██ Nevertheless, the plaintiff persists that the defendant knew that Parmentel's authority to contract in its behalf was limited. In substantiation of this point, we are referred to certain testimony exhibiting that the defendant purchased the automobile in the name of a third person and that, when the constable seized the car, the defendant denied that he was the owner. It is argued that this evidence (when considered with the fact of defendant's financial instability) is sufficient warrant for us to refuse to give credence to defendant's story. But, after carefully scrutinizing the defendant's testimony, we are of the opinion that he has not falsified. He readily admits that he has been financially embarrassed for some time and that his creditors have obtained judgments against him. He frankly states that his reason for placing the title of the car in the name of another was because he feared it would be seized by his creditors. This was not an unnatural thing to do in view of his financial straits, and we cannot see what connection it has with his knowledge respecting Parmentel's lack of authority unless we were inclined to believe that he lied on the witness stand. Moreover, the fact that defendant knew that plaintiff was the owner of the automobile, or because his credit had been rejected when he first offered to purchase the car, cannot be fairly considered as having the effect of placing him on his guard with respect to Parmentel's apparent right to make a cash sale. Albeit, Mr. Villegas admits that it was necessary for Parmentel to obtain plaintiff's approval, in respect of the terms of a sale, only in case the purchase was to be made on credit and not for cash.

The burden was upon the plaintiff to show that the defendant was apprised of the limitations placed by it upon Parmentel's authority. It is true that defendant's knowledge is difficult to establish, in view of his denial, and, in the absence of a statement from Parmentel, the court must look to the surrounding circumstances in order to conclude whether such knowledge did, in fact, exist. However, a review of all the evidence does not satisfy us that, in this case, the defendant was apprised of the limitation placed by plaintiff upon the acts of its agent.

Finally, the plaintiff contends that, whereas it is engaged in the automobile finance business and not in selling used cars, and whereas Parmentel was not authorized to accept automobiles in exchange on repossessed cars sold for its account, this limitation of authority should have been apparent to the defendant. The case of Salley v. Jones Motor Co., 12 La.App. 150, 125 So. 599, (second circuit), is cited as sustaining the proposition. In that case, it was held that a salesman for a used car dealer, not having manifest authority to exchange automobiles or trucks, could not bind his principal on an exchange so made in favor of a purchaser in good faith. But the facts in that matter are distinguishable from those here presented inasmuch as, there, the court, in holding that the agent was not impliedly authorized, found that the evidence did not show that the principal had had any previous transactions with the agent. Here, it is revealed that three or four years prior to the transaction now under discussion, the defendant purchased an automobile from the plaintiff through Parmentel and, on that occasion, Parmentel accepted the defendant's old car in trade and the plaintiff permitted it to be credited on account of the purchase price. This fact sufficiently demonstrates that the defendant was justified in believing that Parmentel had authority to exchange as well as to sell automobiles for the plaintiff.

Being of the opinion that the trial judge erred in finding for the plaintiff, we next consider the defendant's claim for damages resulting from the wrongful issuance of the writ. After the sequestration issued, the defendant appeared and moved to dissolve it on the ground that plaintiff's affidavit (upon which the writ was granted) was false. This motion to dissolve was referred to the merits by the trial court. The defendant claims that, under these exceptional circumstances, he is entitled to the damage suffered by him because the writ was wrongfully issued in that the plaintiff is not the owner of the automobile. He cites, as authority for the proposition, the case of Louisiana State Rice Milling Co., Inc., v. Potter, 179 La. 197, 153 So. 690, where it is held that a conservatory writ is always a mere incident to the main demand as are the facts supporting it and where a rule to dissolve is maintained on a showing that plaintiff did not have the right to possession of the thing sequestered, damages may be awarded to the defendant. But plaintiff claims that it is well settled by the Supreme Court, in Fariss v. Swift, 156 La. 12, 99 So. 893, Socola Rice Mill Co., Inc., v. Gitz, 165 La. 984, 116 So. 407, and many other authorities, that, wherever a conservatory writ is dissolved after hearing the merits, damages may not be allowed. We rule, however, that the case at bar falls under a certain exception recognized by the Supreme Court in the Potter Case, supra, in citing with approval the case of American Hoist Co. v. Frey, 127 La. 183, 184, 53 So. 486. In the latter case, it was held that damages are recoverable where the sequestration was dissolved on trial of the merits because, by consent of counsel, it was agreed that the motion would be considered at the time of trial. The judge below, in the instant case, referred defendant's motion to dissolve to the merits, and it is reasonable to assume that, by so doing, he intended to reserve to defendant whatever rights the latter had for damages accruing to him by reason of the wrongful issuance of the writ.

The damages claimed by defendant are attorney fees in the sum of $150. We do not find any proof in the record that he has actually paid or incurred any obligation to pay this amount to his lawyers. Without such proof, we are powerless, under the jurisprudence, to permit recovery. See Whitney-Central Nat. Bank v. Sinnott, 136 La. 95, 66 So. 551, Alfano v. Franek, 159 La. 498, 105 So. 598, and Burglass v. Villere, 170 La. 805, 129 So. 209. We, therefore, dismiss defendant's claim for attorney's fees as of nonsuit.

For the reasons assigned, the judgment appealed from is annulled, avoided, and reversed, the writ of sequestration heretofore issued is dissolved, and it is now ordered that there be judgment in favor of the defendant, Henry James Veith, Jr., dismissing the plaintiff's suit at its cost.

Reversed.