**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1149

GRACELAND PROPERTIES, LLC PORTABLE BUILDINGS

VERSUS

GIULIANO V. BUBOLA AND ANNETTE M. BUBOLA

**DATE OF JUDGMENT:**     JUL 0 6 2020

ON APPEAL FROM THE NINETEENTH JUDICIAL DISTRICT COURT
NUMBER 634480, SECTION 25, PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

HONORABLE WILSON E. FIELDS, JUDGE

* * * * * *

| | |
|---|---|
| Keith Patrick Richards<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Defendant-in-Reconvention/Appellant, Graceland Properties, LLC Portable Buildings |
| Dale R. Baringer<br>Benjamin J.B. Klein<br>William H. Caldwell<br>James R. Bullman<br>Jarred W. Schick<br>Baton Rouge, Louisiana | Counsel for Defendants/Plaintiffs-in-Reconvention/Appellees, Giuliano V. Bubola, individually and as Executor for the Succession of Annette M. Bubola and Intervenor-Appellee Airline Auto Service, LLC |

* * * * * *

BEFORE: McDONALD, THERIOT AND CHUTZ, JJ.

Disposition: AFFIRMED

McDonald, J. concurs

**CHUTZ, J.**

Plaintiff/defendant-in-reconvention/appellant, Graceland Properties, LLC Portable Buildings ("Graceland"), appeals a trial court judgment, dismissing its claims against Giuliano V. Bubola, individually and as executor of the Succession of Annette M. Bubola (collectively "the Bubolas"), and awarding damages to the Bubolas on their reconventional demand against Graceland. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On March 8, 2010, Graceland entered into a Dealer Agreement with Misty David, whereby she would sell Graceland Portable Buildings on behalf of Graceland as an independent contractor. Mrs. David then entered into an oral lease agreement with the Bubolas and opened a retail facility on the Bubolas property located at 13945 Airline Highway, Baton Rouge, Louisiana. Graceland provided portable buildings for display at Mrs. David's retail facility.

On June 7, 2013, a Judgment of Eviction was entered in favor of the Bubolas and against Mrs. David and "Graceland Portable Bldgs." Mrs. David vacated the leased premises and notified Graceland she was closing her lot, whereby Graceland began removing its portable buildings from the leased premises. While Graceland was able to remove several buildings from the leased premises, the following five buildings were secured with a locked fence and blocked by a parked vehicle on the Bubolas' property: (1) 8x12 Building, Serial Number 5-UX-46621-0812-062312-SM1; (2) 8x12 Building, Serial Number 5-C-38633-0812-123011-SM ("the 8x12 Building"); (3) 10x12 Building, Serial Number 5-UX-43376-1012-041612-SM1; (4) 10x16 Building, Serial Number 5-B-6555-1016-012609-SM; and (5) 12x32 Building, Serial Number 5-C-7337-1232-022309-SM ("the 12x32 Building").

On October 23, 2014, Graceland filed a Petition for Damages for Wrongful Seizure and for Sequestration against Giuliano V. Bubola and Annette M. Bubola,

2

seeking a writ of sequestration for the five remaining portable buildings located on the Bubolas' property as well as damages for wrongful seizure, loss of value of the buildings, legal interest from the date of judicial demand, attorney's fees, and all costs incurred. Graceland alleged Mr. Bubola, through his authorized agent, Nikola Sekulic, refused to allow Graceland to remove the five buildings without payment of Mrs. David's past due rent, which effectively exercised a lessor's privilege without instating a legal proceeding.

An Order of Sequestration was issued, and the East Baton Rouge Parish Sheriff seized, sequestered, and placed into storage the following four buildings on or about July 28, 2015: (1) 8x12 Building, Serial Number 5-UX-46621-0812-062312-SM1; (2) 10x12 Building, Serial Number 5-UX-43376-1012-041612-SM1; (3) 10x16 Building, Serial Number 5-B-6555-1016-012609-SM; and (4) the 12x32 Building. The 8x12 Building was not sequestered. Graceland contends the Bubolas conveyed, destroyed, or otherwise transferred the missing 8x12 Building.

Graceland filed an *Ex Parte* Motion for Release of Sequestered Property, on August 25, 2015, seeking release of the four sequestered buildings. Thereafter, on August 26, 2015, the Bubolas filed an Answer and Reconventional Demand, claiming Mr. Bubola purchased the 12x32 Building under the trade name "Airline Auto" making it the Bubolas' property. The Bubolas alleged Mr. Sekulic had called Graceland and advised them to remove the remaining buildings from the leased premises, with the exception of the 12x32 Building, yet Graceland failed to do so. The Bubolas asserted Graceland's failure to retrieve the buildings interfered with their ability to re-let the property, and the buildings were moved to another location on the property. Furthermore, the Bubolas alleged the sequestration of the 12x32 Building constituted a wrongful seizure for which the Bubolas are entitled to damages and return of the building.

Graceland filed an Exception of No Right of Action, asserting only Airline Auto Service, LLC ("Airline Auto") would own the 12x32 Building and have a right of action. In response, on November 3, 2016, Airline Auto (of which Mr. Sekulic is the sole member) filed a Petition for Intervention, alleging the Bubolas paid the consideration for the 12x32 Building, Airline Auto was listed on the bill of sale as owner, yet it was never the intent of the Bubolas, Mr. Sekulic, or Airline Auto for the building to be acquired in Airline Auto's name. Nevertheless, in the event the trial court found the 12x32 Building was conveyed to Airline Auto, Airline Auto asserted its right to ownership thereof.

On November 3, 2016, Mr. Bubola also filed an *Ex Parte* Motion to Substitute Party Defendant and Plaintiff in Reconvention, alleging Annette Bubola died on October 9, 2015, and he was appointed independent executor of her estate. By order dated November 10, 2016, Mr. Bubola, in his capacity as the independent executor of the Succession of Annette M. Bubola was substituted, as a party defendant.

Following a bench trial at which testimonial and documentary evidence was adduced, the trial court signed a judgment on February 27, 2019, dismissing Graceland's claims against the Bubolas, recognizing the Bubolas purchased and acquired ownership of the 12x32 Building on August 2, 2010, ordering Graceland to return the 12x32 Buildings to the Bubolas, and awarding wrongful seizure damages to the Bubolas in the amount of $3,000 plus judicial interest from the date of judicial demand until paid and all costs of the proceeding.

Graceland now appeals, assigning as error the trial court's dismissal of its principal demand claims and the trial court's award of damages to the Bubolas on their reconventional demand.

4

## DISCUSSION

In its first assignment of error, Graceland argues the trial court committed reversible error in failing to award it wrongful seizure damages, where it was deprived of possession of its buildings through the Bubolas' alleged extra-judicial seizure thereof. In order to recover damages for wrongful seizure, a party must prove the seizure was indeed wrongful. *See, e.g.,* **First Nat. Bank of Commerce v. Boutall**, 422 So.2d 1159, 1161 (La. 1982). In support of its wrongful seizure claim, Graceland offered the trial testimony of Joseph Wyman, a sales representative for Graceland's southern Mississippi division. Mr. Wyman testified that, when he went to the Bubolas' property, the buildings were behind padlocked fence gates with an automobile parked in front, and Mr. Sekulic advised him they were holding the buildings until Graceland paid the rent. Additionally, Graceland offered the trial testimony of Karen Trevathan, former counsel for Graceland, who stated she contacted Mr. Sekulic regarding how Graceland could get the buildings and was told it would require payment of some of the rent owed by Mrs. David.

Mr. Sekulic managed the property located at 13945 Airline Highway for the Bubolas. At trial, Mr. Sekulic testified it was not true that he refused to allow Graceland to retrieve its buildings, and he would have allowed Graceland to take all its buildings from the property. In fact, he made calls to Graceland to come pick up their buildings, as he was trying to get them out of the way so the Bubolas could demolish the office space. He stated he told Mr. Wyman rent was due, and the Bubolas owned one of the buildings. However, when Mr. Wyman advised him Graceland was not responsible for the rental, Mr. Sekulic said it was okay and he understood. Mr. Sekulic further testified that, when he was out of town, someone attempted to access the buildings without notice; however, the gate was locked, and he did not drive the five hours it would have taken to return and unlock the gate. Mr. Sekulic stated that they waited but eventually had to move forward with

5

the demolitions for the new tenant. Mr. Sekulic and Mr. Bubola testified that the buildings then were moved to the back of the property, and Mr. Bubola stated this was so Graceland could pick them up.

As to his conversation with Ms. Trevathan, Mr. Sekulic maintained it was not true that he told her Graceland would not be able to get the rest of its buildings until Mrs. David's past due rent was paid. Instead, he told her rent was due, they owned one of the buildings, and Graceland could have the other buildings. He did not want the Bubolas' building taken by mistake.

When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice which bear so heavily on the listener's understanding and belief in what is said. **Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. **Id.** at 844-45. However, where such factors are not present and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, then that finding can virtually never be manifestly erroneous or clearly wrong. **Id.** at 845.

Where the principal demand was rejected, the trial court evidently believed the Bubolas' witnesses, as supported by their documents, and discredited the Graceland witnesses. We find no manifest error in this implied credibility determination, where no documents or objective evidence contradict accounts of the Bubolas' witnesses and there were no inconsistencies in their stories. Under such circumstances, we find no evidence that the Bubolas seized Graceland's

6

buildings or deprived Graceland of possession of its buildings, and we see no reason to disturb the trial court's dismissal of Graceland's wrongful seizure claim.

Graceland further asserts, in its first assignment of error, the trial court committed reversible error in not finding the Bubolas liable for conversion of and negligent failure to secure the 8x12 Building. In Louisiana, conversion is an intentional tort and consists of an act in derogation of the plaintiff's possessory rights. **Jones v. Americas Insurance Co.**, 2016-0904 (La. App. 1st Cir. 8/16/17), 226 So.3d 537, 542. The tort of conversion is committed when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights. **Id.** Any wrongful exercise or assumption of authority over another's goods, depriving him of the possession, permanently or for an indefinite time, is a conversion. **Id.** The intent required for a conversion is not necessarily that of conscious wrongdoing. **Id.** It is rather an intent to exercise a dominion or control over the goods which is in fact inconsistent with the owner's rights. **Id.**

In support of its conversion claim, Graceland introduced an Inventory Acceptance showing the 8x12 Building was transferred to Mrs. David's inventory, a Dealer Closure Form dated June 13, 2013, reflecting the 8x12 Building[1] was on the lot at the time of closure, and a Transfer Order dated July 8, 2013 showing the 8x12 Building was on the property as of that date and needed to be transferred to a new sales location. James Berry, a legal assistant for Graceland, testified an 8x12 Building was not present on the property when the Sheriff picked up the buildings and was not sequestered.

However, no evidence or testimony was submitted at trial to show the Bubolas or Mr. Sekulic moved the 8x12 Building from the Bubolas' property or

---

[1] The serial number for the 8x12 Building is identified as 5-C-38633-0812-123011-SM, on the Inventory Acceptance and the Transfer Order. However, a different serial number is identified on the Dealer Closure Form, specifically 5-C-38633-0812-123011R.

otherwise disposed of or deprived Graceland of possession of the 8x12 Building. Furthermore, considering the testimonies of Mr. Bubola and Mr. Sekulic that Graceland was asked to come pick up the buildings and no one did so until the Sheriff sequestered the buildings, we find no evidence that the Bubolas exercised dominion or control over the 8x12 Building.

As to Graceland's claim the Bubolas were negligent in failing to secure the 8x12 Building, Graceland has offered no argument or evidence to reflect the Bubolas had a duty to secure or preserve Graceland's buildings remaining on their property. *See, e.g.,* La. Civ. Code art. 2315; **Cusimano v. Wal-Mart Stores, Inc.,** 2004-0248 (La. App. 1st Cir. 2/11/05), 906 So.2d 484, 486-87. Even if a duty were owed, Graceland has presented no evidence as to a breach of such a duty, where the evidence reflects the buildings were secured behind a locked gate. Therefore, we find Graceland's first assignment of error lacks merit and affirm the trial court's dismissal of Graceland's claims against the Bubolas.

In its second assignment of error, Graceland argues the trial court's award of damages to the Bubolas was manifestly erroneous, where the 12x32 Building was never moved from its location on the sales lot, remained in Mrs. David's monthly inventory from August 2010 to June 2013, and was never used by the Bubolas or Airline Auto between the time of the alleged purchase and Mrs. David's eviction. In response, the Bubolas argue the sale of the 12x32 Building constituted a valid sale of a movable, where Mrs. David had apparent authority to sell the building to them.

A sale is a contract whereby a person transfers ownership of a thing to another for a price in money. La. Civ. Code art. 2439. The thing, the price, and the consent of the parties are requirements for the perfection of a sale. **Id.** Ownership is transferred between the parties as soon as there is agreement on the thing and the price is fixed, even though the thing sold is not yet delivered nor the

price paid. La. Civ. Code art. 2456. The Bubolas contend the thing they purchased was the 12x32 Building. In this regard, Mrs. David completed a Graceland bill of sale for the 12x32 Building. Although there was a typographical error on the bill of sale whereby the serial number of the 12x32 Building was transcribed incorrectly, Mrs. David confirmed the 12x32 Building was the subject of the bill of sale and was in her inventory, at the time of the sale on August 2, 2010. In this regard, she marked the building on her inventory list as sold. Thus, we find there was agreement as to the thing.

The price must be fixed by the parties in a sum either certain or determinable through a method agreed by them. *See* La. Civ. Code art. 2464. Mrs. David testified the purchase price for the 12x32 Building was $6,971.97, and Mr. Bubola gave her a check in the amount of $3,904.33.[2] Mr. Bubola gave Mrs. David a credit for rent due, as the balance of the purchase price of the 12x32 Building. Mrs. David testified she was to pay the balance owed for the building and sent a check to Graceland in the total amount of $6,971.97. Thus, we find an agreement as to the price to be paid.

As to consent for the sale, it must be determined whether Mrs. David had authority to sell the 12x32 Building to the Bubolas, under the law of agency and mandate. A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal. La. Civ. Code art. 2989. A mandatary's power or authority is composed of his actual authority, express or implied, together with the apparent authority which the principal has vested in him by his conduct. **McLin v. Hi Ho, Inc.**, 2012-1702 (La. App. 1st Cir. 6/7/13), 118 So.3d 462, 467.

---

[2] Although the bill of sale states the purchaser is Airline Auto, Mr. Bubola signed the bill of sale and paid the purchase price. He testified he told Mrs. David that he was purchasing the building for Airline Auto. Mr. Sekulic, as the owner of Airline Auto, maintained that Mr. Bubola was the purchaser of the building.

The Louisiana Supreme Court explained the concept of apparent authority in **Tedesco v. Gentry Development, Inc.**, 540 So.2d 960, 963 (1989):

> Apparent authority is a doctrine by which an agent is empowered to bind his principal in a transaction with a third person when the principal has made a manifestation to the third person, or to the community of which the third person is a member, that the agent is authorized to engage in the particular transaction, although the principal has not actually delegated this authority to the agent. In an actual authority situation the principal makes the manifestation first to the agent; in an apparent authority situation the principal makes this manifestation to a third person. However, the third person has the same rights in relation to the principal under either actual or apparent authority. Further, apparent authority operates only when it is reasonable for the third person to believe the agent is authorized and the third person actually believes this. (Citations and footnote omitted).

Effective January 1, 1998, the Louisiana legislature enacted La. Civ. Code art. 3021 to specifically address the liability of a principal which arises when he causes a third party to believe another person is his agent. **American Bank & Trust v. Singleton**, 2017-0480 (La. App. 1st Cir. 11/1/17), 233 So.3d 730, 736. In civilian terms, the common law "agent" is known as a "mandatary." **Id.** (*citing* La. Civ. Code arts. 2989, *et seq.*). Under La. Civ. Code art. 3021, one who causes a third person to believe that another person is his mandatary is bound to the third person who, in good faith, contracts with the putative mandatary. **Id.** In interpreting La. Civ. Code art. 3021, this court has concluded the pre-Article 3021 judicial understanding of apparent authority appears to be analogous to the concept of putative mandate in La. Civ. Code art. 3021. **Id.** As such, for a third person to prove a putative mandatary relationship, he still must show that the principal has made a manifestation to a third person, or to the community of which the third person is a member, that the putative mandatary is authorized to engage in the particular transaction. **Id.** Then, the third person must show he reasonably relied on the mandatary's manifested authority. **Id.**

10

The burden of proving apparent authority is on the party relying on the mandate. **God's Glory & Grace, Inc. v. Quik International, Inc.**, 2005-1414 (La. App. 1st Cir. 6/9/06), 938 So.2d 730, 735, <u>writ denied</u>, 2006-1739 (La. 10/6/06), 938 So.2d 86. Thus, the third party may not blindly rely on the mandatary's assertions but has a duty to inquire into the nature and extent of the mandatary's power. **Id.**

A trial court's determination as to whether a putative mandate exists is a factual determination which will not be reversed absent manifest error. **Tresch v. Kilgore**, 2003-0035 (La. App. 1st Cir. 11/7/03), 868 So.2d 91, 95. When the fact finder's findings are reasonable in light of the entire record, an appellate court may not reverse a choice between two permissible views of the evidence. **Id.** at 94.

In its oral reasons for judgment, the trial court found Mrs. David was acting as Graceland's agent for selling buildings and sold the building to the Bubolas, who paid a purchase price. After reviewing the record as well as the testimony and evidence presented at trial, we conclude there is a reasonable factual basis for the trial court's conclusion.

The record provides ample evidence showing Graceland manifested to the community that Mrs. David was authorized to sell Graceland portable buildings. Paragraph 1 of the Dealer Agreement authorized Mrs. David, as a dealer, to act as Graceland's distributor with respect to the sales of Graceland's portable buildings. Paragraph 3(a) of the Dealer Agreement specified Graceland would provide various styles of portable buildings for display purposes for Mrs. David's lot. Mr. Wyman testified Mrs. David "had authority to sell the buildings being a dealer ... [a]s an agent. She's an agent for Graceland. Being a dealer she can sell the buildings for the list price."

Graceland gave Mrs. David brochures with the Graceland logo to give to prospective customers in an effort to sell the buildings. Nothing in the brochure

11

specifies that Mrs. David, as a dealer, was not authorized to sell the buildings without corporate approval. Furthermore, in her training, Mrs. David was not told to post signs stating she did not have authority to speak for Graceland. Additionally, under Paragraph 5 of the Dealer Agreement, Graceland provided dealers with blank certificates of warranty. Dealers were authorized to fill out Graceland's warranty form, at the time of sale, and sign the form as a "Graceland Representative."

Although Paragraph 21 of the Dealer Agreement states "[d]ealer shall have no authority whatsoever, whether express or implied, to assume, create or incur any obligation or liability whatsoever on behalf of or in the name of Company, or to bind Company in any manner whatsoever[,]" Mrs. David operated her business as Graceland of Baton Rouge, LLC and was permitted to use signage which said Graceland Portable Buildings. Mr. Berry testified there was no provision in the Dealer Agreement, prohibiting Mrs. David from representing she was Graceland and he was unaware of any provision requiring her to disclose that she did not own the buildings. Additionally, Mrs. David was not required to obtain Graceland's approval before publishing marketing such as a business card using the name "Graceland Portable Buildings." In this regard, Mrs. David's business cards bore the name "Graceland Portable Buildings," which is Graceland's registered trademark.

We further find the Bubolas reasonably relied on Mrs. David's manifested authority. The bill of sale signed by Mr. Bubola said "Graceland" at the top and included the information for Graceland of Baton Rouge, LLC. We are not persuaded by Graceland's contention that the language on the bill of sale, which recites "[a]ll sales orders are not complete until approved by the Graceland Corporate Office," means there could be no completed sale until approval was received. This language is in small print at the bottom of the document and is

12

subject to more than one reasonable interpretation, where it does not specify that all sales in general are subject to approval and only states "sales orders" are subject to approval. Additionally, Mr. Bubola was given a Graceland brochure about the buildings. Mrs. David also gave Mr. Bubola a Certificate of Warranty for the 12x32 Building. The warranty specifies it is a Certificate of Warranty for Graceland Portable Buildings and was signed by Mrs. David as a "Graceland Representative."

In **Harepour v. A. C. Collins Ford of New Orleans, Inc.**, 363 So.2d 1261 (La. App. 4th Cir. 1978), although the defendant dealer's used car salesman was dealing for his own benefit and the defendant did not authorize the transaction, the Fourth Circuit found the plaintiff purchaser could reasonably infer that a salesman employed in an automobile dealership was authorized to sell cars for the owner. **Id.** at 1263. There was nothing to indicate to the plaintiff that she was not dealing with a representative of the defendant, and she could rely on the salesman's apparent authority. **Id.** Thus, having conferred apparent authority on the salesman to act on its behalf, the defendant was liable for wrongdoings of its ostensible agent for loss the plaintiff sustained. **Id.**

Similarly, in **General Finance Co. of Louisiana v. Veith**, 177 So. 71 (La. Ct. App. 1937), the plaintiff-finance company delivered an automobile to a used car dealer to be sold for the plaintiff's account, with the understanding the car was to be sold only in case the plaintiff approved of the transaction. **Id.** at 73. However, the used car dealer sold the automobile on unauthorized terms to the defendant purchaser without plaintiff's approval. **Id.** The plaintiff sought and obtained a writ of sequestration directing the constable to seize and hold the vehicle, yet the defendant contended the writ of sequestration was improvidently issued as he was the lawful owner of the vehicle where he purchased it from the plaintiff's duly authorized agent. **Id.** at 72-73. The court held that the plaintiff, in

placing its automobile with the dealer for sale, clothed the dealer with the apparent authority to bind the plaintiff, and nothing reflected that the defendant was apprised of the limitation placed by plaintiff upon the acts of its agent. **Id.** at 74; *see also* **James v. Judice**, 140 So.2d 169, 172 (La. App. 3d Cir. 1962).

Herein, Graceland placed buildings in Mrs. David's possession for the purpose of sale, clothing her with the apparent authority to complete the sale. The record provides a reasonable factual basis for the trial court's conclusion that Graceland manifested to the Baton Rouge community that Mrs. David was its agent with full authority to complete sales. Our review of all the evidence does not reflect the Bubolas were aware Mrs. David's mandate was of a limited nature. Considering the foregoing, the trial court did not legally or manifestly err in finding the thing, price, and consent were present, and the sale of the 12x32 Building from Graceland, through Mrs. David, to the Bubolas was perfected. Where the perfection of a sale does not require delivery of the thing sold, we find no merit in Graceland's contention that there was no valid sale, because the 12x32 was never delivered and remained on the lot.

The Bubolas alternatively argue they gained ownership of the 12x32 Building through acquisitive prescription. Ownership in movables may be acquired either by a prescriptive period of three years or ten years. La. Civ. Code art. 3489. Under La. Civ. Code art. 3490, ownership of a movable may be acquired through prescription of three years by a good faith possessor. **Allen v. Allen**, 2016-0407 (La. App. 1st Cir. 12/22/16), 210 So.3d 477, 481. To establish three-year acquisitive prescription under La. Civ. Code art. 3490, one must establish: (1) possession as owner for three years; (2) in good faith; (3) under an act sufficient to transfer ownership; and (4) without interruption. **Id.** The party asserting acquisitive prescription has the burden of proving all facts essential to support it. **Id.** Mere physical possession is insufficient. **Id.**

14

To acquire possession, one must intend to possess as owner and must take corporeal possession of the thing. La. Civ. Code art. 3424. Corporeal possession is the exercise of physical acts of use, detention, or enjoyment over a thing. La. Civ. Code art. 3425. One is presumed to intend to possess as owner unless he began to possess in the name of and for another. La. Civ. Code art. 3427. Possession may be exercised by the possessor or by another who holds the thing for him and in his name. La. Civ. Code art. 3429. Once acquired, possession is retained by the intent to possess as owner even if the possessor ceases to possess corporeally. La. Civ. Code art. 3431. The intent to retain possession is presumed unless there is clear proof of a contrary intention. La. Civ. Code art. 3432.

The August 2, 2010 bill of sale, which was signed by Mr. Bubola, is an act sufficient to transfer ownership of the 12x32 Building to him. Moreover, the 12x32 Building undisputedly remained on the lot on the Bubolas' property, as Mrs. David agreed to hold it for them. Mr. Bubola and Mr. Sekulic both testified that Mr. Bubola purchased the 12x32 Building. Mr. Sekulic made improvements to the 12x32 Building in or around February 2014, and the building was in use at the time of the sequestration. No evidence reflects the Bubolas were aware of Graceland's contention that they did not own the 12x32 Building, until after the sheriff sequestered it on or about July 28, 2014, or that their possession or intent to possess as owners was interrupted or lost during that time. Accordingly, we find the Bubolas possessed the 12x32 Building for three years in good faith and without interruption.[3]

Having concluded the trial court correctly determined the Bubolas owned the 12x32 Building, we also conclude the trial court properly determined

---

[3] The Bubolas, alternatively, assert the relationship between Mrs. David and Graceland was one of consignment. Where we affirm the finding that Graceland clothed Mrs. David with apparent authority for the perfected sale and alternatively find that the Bubolas acquired the 12x32 Building through acquisitive prescription, we pretermit analysis of whether a consignment relationship existed.

15

Graceland acted improperly in removing it from the Bubolas' lawful possession *via* the sequestration. Accordingly, we find Graceland's second assignment of error lacks merit, and the trial court's award of wrongful seizure damages to the Bubolas was not manifestly erroneous.

## DECREE

For these reasons, the trial court's judgment, dismissing the claims of Graceland Properties, LLC Portable Buildings against Giuliano V. Bubola, individually and as executor of the Succession of Annette M. Bubola, and awarding damages to Giuliano V. Bubola, individually and as executor of the Succession of Annette M. Bubola on his reconventional demand against Graceland Properties, LLC Portable Buildings, is affirmed. Appeal costs are assessed against Graceland.

**AFFIRMED.**